

```
FILED & JUDGMENT ENTERED
     Christine F. Winchester

      December  12  2024

  Clerk, U.S. Bankruptcy Court
 Western District of North Carolina
```



*Laura T Beyer*
_____
Laura T. Beyer
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: | Case No. 23-30407 |
| **Tantum Companies, LLC, et al.,**[1] | Chapter 11 |
| Debtors. | |

## ORDER CONFIRMING THE PLAN OF REORGANIZATION OF
## TANTUM COMPANIES, LLC

THIS MATTER having come before the Court on the *Amended Plan of Reorganization of Tantum Companies, LLC* dated September 17, 2024 (the "Plan"), filed by Tantum Companies, LLC ("Tantum" or the "Plan Debtor")[2] and the *Disclosure Statement to the Amended Plan of Reorganization of Tantum Companies, LLC* dated September 17, 2024 (the "Disclosure Statement"), copies of which were filed on the docket in this case, [Doc. 335 and 336], and attached hereto as Exhibit A; and the Court previously having entered the *Order Approving Motion of Tantum Companies, LLC for Entry of an Order (I) Conditionally Approving the Disclosure Statement, as Amended, and (II) Consolidating the Hearings on Final Approval of the Disclosure Statement and Confirmation of the Amended Plan* [Doc. 349], September 20, 2024  (the "Conditional Approval

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Tantum Companies, LLC (Tax ID: 8256) and BYB Leasing, LLC (Tax ID: 2164).

[2] Capitalized terms not otherwise defined herein shall have those meanings set forth in  the Plan.

Order"), conditionally approving the Disclosure Statement for solicitation purposes only; and the Debtors having filed the *Notice of: I) Confirmation Hearing on Amended Plan of Reorganization of Tantum Companies, LLC; II) Final Hearing on the Disclosure Statement to the Amended Plan of Reorganization of Tantum Companies, LLC; and III) Deadline for Filing Objections to Disclosure Statement and Plan, and for Filing Acceptances or Rejections of Plan* [Doc. 350] (the "Notice of Hearing"), and the Debtor having served the Disclosure Statement and Plan and the other Plan related documents on the all holders of claims and interests against or in the Plan Debtor, and other parties in interest; and the Debtor having filed the i) *Declaration of Mark Cote in Support of I) Final Approval of the Disclosure Statement to the Amended Plan of Reorganization of Tantum Companies, LLC, and II) Confirmation of the Amended Plan of Reorganization of Tantum Companies, LLC* [Doc. 360] (the "Cote Declaration"), and ii) the *Report of Voting on Plan of Reorganization for Under Chapter 11* [Doc. 357] (the "Voting Report"); and the *Tennessee Department of Revenue's Objection to the Debtor's Amended Chapter 11 Plan of Reorganization* (the "TDOR Objection") filed by the Tennessee Department of Revenue ("TDOR") on October 4, 2024 [Doc. 353] having been resolved as set forth herein; and the Court having considered the record in these chapter 11 cases, the support for the  Plan evidenced on the record and in the Cote Declaration and Voting Report, the compromises and settlements embodied in and contemplated by the Plan, the submissions and arguments of counsel regarding confirmation of the Plan, and the evidence regarding confirmation of the Plan; and the hearing to consider confirmation of the Disclosure Statement and Plan having occurred on October 23, 2024 (the "Confirmation Hearing"); and after due deliberation:

**THE COURT HEREBY FINDS, DETERMINES AND CONCLUDES AS FOLLOWS:**

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the

2

Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted

as such.  To the extent any of the following conclusions of law constitute findings of fact, they are

adopted as such.

2.      This Court has jurisdiction over these chapter 11 cases (the "Chapter 11 Cases")

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these proceedings and the Chapter 11 Cases in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Approval of the Disclosure

Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b)(2)

and this Court may enter a final order hereon under Article III of the United States Constitution.

The Debtors are eligible to be debtors under Section 109 of the Bankruptcy Code.  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Plan Debtor is the plan proponent

in accordance with Section 1121(a) of the Bankruptcy Code.

3.      On June 26, 2023 (the "Petition Date"), Tantum Companies, LLC and BYB

Leasing, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The

Debtors continue to operate their businesses and manage their affairs as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been

appointed pursuant to Section 1104 of the Bankruptcy Code.  On July 18, 2023, the *Order

Appointing Creditors' Committee* [Doc. 47] was entered appointing the unsecured creditors'

committee for Tantum (the "Committee") in these Chapter 11 Cases.

4.      The Court takes judicial notice of the docket of these Chapter 11 Cases maintained

by the Clerk of the Court, including all pleadings and other documents filed, all orders entered,

and all evidence and arguments made, proffered, or adduced at the hearings held before the Court

during the pendency of the Chapter 11 Cases.

5.      The disclosures contained in the Disclosure Statement provided holders of Claims

and interests entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

6.     The Plan Debtor has the burden of proving the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Plan Debtor has met such burden.

7.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules") and applicable nonbankruptcy law.

8.     The period during which the Plan Debtor solicited acceptances to the Plan was reasonable in the circumstances of these Chapter 11 Cases and enabled holders of Claims to make an informed decision to accept or reject the Plan.

9.     The Plan, the Disclosure Statement, the ballots, the Conditional Approval Order, and the Notice of Hearing were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, and the Local Rules. The forms of the ballots adequately addressed the particular needs of these Chapter 11 Cases.

10.     The holders of Claims in Class 2 (The First DIP Lender), Class 3 (Prepetition Secured Claim of Guaranty Bank), Class 4 (Guaranty Bank's Equipment Loans), and Class 5 (Allowed General Unsecured Claims) have voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

11.     Notice of the Confirmation Hearing was adequate pursuant to Bankruptcy Rules 2002 and 3020.  All parties have had an opportunity to appear and be heard with respect thereto.

No other or further notice is required.

12.     The Plan Debtor, and its respective agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

13.     The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Plan Debtor as proponent, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

14.     In addition to Administrative Expense Claims, which need not be classified, Article 3 of the Plan classifies seven Classes of Claims and interests for Tantum.  The Claims and interests placed in each Class are substantially similar to other Claims and interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and interests.  The Plan therefore satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

15.     Pursuant to Article 3 of the Plan, the First DIP Lender (Class 2) is identified as unimpaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code, thereby satisfying Section 1123(a)(2) of the Bankruptcy Code.

16.     Article 3 of the Plan designates the following Classes as impaired within the meaning of Section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and interests in those Classes, thereby satisfying Section 1123(a)(3) of the Bankruptcy Code: Class 1: Unsecured Priority Tax Claims, Class 3: Prepetition Secured Lender, Class 4: Guaranty Bank's Equipment Loans, Class 5: Allowed General Unsecured Claims, and Class 6: Claims of Axum.

17.     The Plan provides for the same treatment by the Plan Debtor for each Claim or

interest in each respective Class unless the holder of a particular Claim or interest has agreed to a less favorable treatment of such Claim or interest, thereby satisfying Section 1123(a)(4) of the Bankruptcy Code.

18.     The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying Section 1123(a)(5) of the Bankruptcy Code, including the (i) formation and funding of a Liquidating Trust for the benefit of the holders of Allowed General Unsecured Claims against Tantum, (ii) the payment in full of the Claim of the Prepetition Secured Lender on the Effective Date; (iii) the commitment by the Axum Fund to fund the Class 3 Payment to the Prepetition Secured Lender, costs of administration, and any other expenses required for confirmation of the Plan; and (iv) a Post-Confirmation Revolving Loan provided by the Axum Fund to the Reorganized Debtor.

19.     Article 6 of the Plan governs the assumption and rejection of Executory Contracts and Unexpired Leases and meets the requirements of Section 365(b) of the Bankruptcy Code.

20.     The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Allowed Claims, (b) the disposition of executory contracts and unexpired leases, and (c) allowance or disallowance of Claims.

21.     The Plan (including all documents necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. Such good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Cote Declaration and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.  The Plan was developed and negotiated in good faith and at arms'-length among representatives of the Debtor, the Prepetition Secured Lender and the Committee.   Further, the Plan's classification provisions have been

negotiated in good faith and at arm's length, are consistent with Sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code and applicable case law in the Fourth Circuit.

22.    Any payment made or to be made by the Plan Debtor for services or for costs and expenses of the Plan Debtor's professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by this Court as reasonable, or are subject to the approval of the Court as reasonable.

23.    The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement, and the other evidence proffered or adduced at the Confirmation Hearing, including, but not limited to, the Cote Declaration (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Plan Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

24.    The Holders of Class 7 Claim (the "Deemed Rejecting Class") are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Pursuant to Section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed Rejecting Class is impaired and is deemed to have rejected the Plan.

25.    The treatment of Allowed Administrative Expense Claims and Unsecured Priority Tax Claims under Article 2 and 3 of the Plan satisfies the requirements of Section 1129(a)(9)(A) and (C) of the Bankruptcy Code.

26.    Holders of Claims in Class 3, 4, and 5 voted to accept the Plan, determined without

including any acceptance of the Plan by any insider, thereby satisfying the requirements of Section 1129(a)(10) of the Bankruptcy Code.

27.     The Plan provides that on the Effective Date, and thereafter as may be required, the Reorganized Debtor shall pay all fees payable pursuant to Section 1930 of title 28 of the United States Code, thereby satisfying Section 1129(a)(12) of the Bankruptcy Code.

28.     Bankruptcy Code sections 1114, 1129(a)(14), 1129(a)(15), and 1129(c) do not apply to the Plan Debtor.

29.     All documents necessary to implement the Plan, including the Liquidating Trust Agreement, and all other relevant and necessary documents have been developed and negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.  Between the Confirmation Hearing and the Effective Date, the parties may modify and amend such documents, provided that any modifications shall be consistent with the terms and intent of the Plan as proposed and shall be effective only if consented to by the parties affected thereby.

30.     Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

1.     The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.     Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.     The Disclosure Statement is approved on a final basis as containing adequate

information within the meaning of Section 1125 of the Bankruptcy Code.

4.      The Plan, as amended or modified, including all exhibits and attachments to the
Plan filed by the Debtor are approved and the Plan is hereby confirmed under section 1129 of the
Bankruptcy Code.  The Plan, including all terms, all exhibits and attachments to the Plan, as
amended or modified, are incorporated by reference into and are an integral part of this
Confirmation Order.  The failure to specifically include or refer to any particular article, section,
or provision of the Plan or any related document in this Confirmation Order does not diminish or
impair the effectiveness or enforceability of such article, section, or provision.  Each term and
provision of the Plan is valid and enforceable pursuant to its terms.

5.      The compromises and settlements set forth in the Plan are approved and will be
effective immediately and binding on all parties in interest on the Effective Date.

6.      The terms of the Plan and the exhibits thereto  are incorporated herein by reference
and are an integral part of this Confirmation Order. The terms of the Plan and all other relevant and
necessary documents executed or to be executed in connection with the transactions contemplated
by the Plan shall be effective and binding as of the Effective Date.

7.      The only objection to the Plan was the TDOR Objection.  As announced at the
Confirmation Hearing, the TDOR Objection was resolved by agreement between the Debtor and
the TDOR, subject to the following conditions, which are hereby incorporated into the Plan:

      a.   TDOR shall not be required to file an application for payment of any
administrative expense claim in the case but such claim may be asserted
through a proof of claim, that has been, or will be filed by the TDOR.

      b.   The Debtor will pay TDOR's Allowed prepetition priority tax claim in
monthly installments over 5 years from the Petition Date at an annual
interest rate of 8%.

      c.   TDOR's prepetition penalty claim, asserted in an amount of $125,566.70,
will be paid as a General Unsecured Claim.

      d.   The Plan Debtor, the Reorganized Debtor, the Committee and/or the
Liquidating Trustee shall have the right to object to any claims filed by
TDOR in accordance with the terms of the Plan.

8.      The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

9.      The forms of ballots are in compliance with Bankruptcy Rule 3018(c) and are approved in all respects.

10.     The classification and allowance of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims set forth on the ballots for voting purposes do not constitute an allowance of any Claim for purposes of distribution under the Plan.  Except with respect to Claims that are expressly Allowed under the Plan or herein, the Reorganized Debtor and the Liquidating Trustee retain all rights to contest the amount, classification or validity of any Claim for purposes of allowance and/or distribution under the Plan, as provided in the Plan and this Confirmation Order.

11.     Subject to the occurrence of the Effective Date as provided in Article 10 of the Plan, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan, as amended or modified (including all exhibits and attachments thereto, and all documents and agreements executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Plan Debtor and the Reorganized Debtor, (b) all holders of Claims against and interests in the Plan Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan, (c) each person acquiring property or an interest under the Plan, (d) any other party-in-interest, (e) any person making an appearance in these Chapter 11 Cases, (f) any person receiving notice of these Chapter 11 Cases or the Plan, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or

10

guardians. Upon the making of the distributions to be made on the Effective Date or soon thereafter, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Code.

12.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan. In accordance with section 1142(b) of the Bankruptcy Code, upon the entry of this Confirmation Order, the Plan Debtor, the Reorganized Debtor, the Committee, and the Liquidating Trustee, as applicable, each acting by and through their respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Disclosure Statement and Plan.

13.     On the Effective Date, the Liquidating Trust shall be formed and the Liquidating Trustee shall be appointed in accordance with the Liquidating Trust Agreement, with rights as set forth in the Plan and the Liquidating Trust Agreement.  Further, Jason M. Torf, Esq. is appointed as the Liquidating Trustee for the Liquidating Trust.

14.     On the Effective Date, all existing interests in the Plan Debtor shall be canceled and Axum Capital Partners Fund I LP, or its designated affiliate entity, will be the sole member of the Reorganized Debtor.

15.     On the Effective Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, any assets that are the property of the Plan Debtor's Estates on the Effective Date, including, without limitation, any Causes of Action, (other than the Liquidating Trust Assets which shall vest in the Liquidating Trust free and clear of all Claims, interests, liens, encumbrances, charges, liabilities, and other interests on the Effective Date), shall revest in the Reorganized Debtor free and clear of all Claims, interests, liens, encumbrances, charges, liabilities, and other interests,

except as otherwise provided in the Plan or this Confirmation Order and subject to the terms and conditions of the Plan and this Confirmation Order.

16.     Requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Effective Date, must be filed no later than the Administrative Claims Bar Date. Such Administrative Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtor, counsel for the Committee, and Bankruptcy Administrator, within thirty (30) days from the Effective Date. **FAILURE TO TIMELY AND PROPERLY FILE AND SERVE SUCH REQUEST FOR PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED, ESTOPPED, AND ENJOINED.**

17.     Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor and Liquidating Trust may employ and pay any professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

18.     The injunction provisions set forth in the Plan, including, without limitation, Article 9 of the Plan, are hereby approved in their entirety. Except as otherwise provided in the Plan or this Confirmation Order, from and after the Effective Date, all persons are permanently enjoined from commencing or continuing in any manner, any cause of action enjoined pursuant to the Plan or this Confirmation Order.

19.     In accordance with Article 6 of the Plan, (i) BYB Leasing, LLC is authorized, pursuant to 11 U.S.C. §365, to assume and assign those Leases as shown on Article 6.1, Exhibit A, as modified by that Article 6.1, Exhibit A attached hereto, and (ii) the Plan Debtor is authorized,

pursuant to 11 U.S.C. § 365, to assume those Leases as shown on Article 6.1, Exhibit B, as modified by that Article 6.1, Exhibit B attached hereto, as of the Effective Date. The Cure Amounts set forth in the attached amended Article 6.1, Exhibit A and Exhibit B are hereby established as the cure amounts necessary for the assumption and assignment or assumption, as the case may be, and the Plan Debtor shall pay such Cure Amounts on the Effective Date. The Debtors are authorized and empowered to take all actions necessary and appropriate in order to implement the assumption and/or assignment of such leases as provided for in the Plan.

20.      Except as otherwise expressly provided in the Plan or in this Confirmation Order or related documents, or for obligations under the Plan, all persons who have held, hold or may hold claims or interests that have been released, discharged, or are subject to exculpation, are permanently enjoined, from and after the Effective Date, from taking any of the following actions: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such persons on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting or enforcing any encumbrance of any kind against such persons or the property or estate of such persons on account of or in connection with or with respect to any such claims or interests; and (4) commencing or continuing any manner or action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released, settled or discharged pursuant to the Plan.

13

21.    The rights afforded in the Plan and the treatment of all Claims and interests therein shall be in exchange for and in complete satisfaction of all claims and interests of any nature whatsoever against the Plan Debtor or any of its assets, property or Estate.

22.    The Plan shall not become effective unless and until all conditions set forth in Article 10.1 of the Plan have been satisfied or waived.

23.    All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid on the Effective Date and thereafter as may be required.To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

24.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these chapter 11 cases after the Effective Date shall be limited to the following parties: (i) the Debtors and their counsel; (ii) the Liquidating Trustee and his counsel;  (iii) the Bankruptcy Administrator;  (iv) the Creditors' Committee counsel; and (v) any party known to be directly affected by the relief sought.

25.    The Plan Debtor shall cause to be served a notice of the entry of this Confirmation Order upon all parties in interest no later than five (5) business days after the entry of this order.

26.    The Plan Debtor shall cause to be served a Notice of Effective Date upon all parties in interest no later than five (5) business days after and occurrence of the Effective Date.

27.    Pursuant to Section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

14

28.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of the Plan, this Confirmation Order and all matters arising in, under and related to these chapter 11 cases, as set forth in Article 12 of the Plan and section 1142 of the Bankruptcy Code.

| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |
|---|---|

## EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>**Tantum Companies, LLC, et al.,**[1]<br><br>               Debtors. | Case No. 23-30407<br><br>Chapter 11 |

## <u>AMENDED PLAN OF REORGANIZATION OF<br>TANTUM COMPANIES, LLC</u>

Dated:  Charlotte, North Carolina
       September 17, 2024

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
Robert A. Cox, Jr. (Bar No. 21998)
Matthew A. Winer (Bar No. 56222)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile:  (704) 344-1483
*rcox@lawhssm.com*
*mwiner@lawhssm.com*
*Attorneys for Plan Debtor*

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Tantum Companies, LLC (8256) and BYB Leasing, LLC (2164).

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | Case No. 23-30407 |
| **Tantum Companies, LLC, et al.,**[1] | Chapter 11 |
| Debtors. | |

## AMENDED PLAN OF REORGANIZATION OF
## TANTUM COMPANIES, LLC

### PREAMBLE

Debtor Tantum Companies, LLC hereby submits this "Amended Plan of Reorganization of Tantum Companies, LLC" pursuant to Section 1121(a) under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

### ARTICLE I
### DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1.    Administrative Claim.  Any cost or expense of administration of the Tantum Companies, LLC Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Claims Bar Date, or (b) Allowed under Section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Cases, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Cases, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Tantum Companies, LLC (8256) and BYB Leasing, LLC (2164).

provided by Section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under Section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

1.2.    <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred <u>after</u> the Confirmation Date.

1.3.    <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.4.    <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim and if such claim is timely filed).  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5.    <u>Allowed Priority Tax Claim</u>.  Any Allowed Claim arising prior to the Petition Date entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.6.    <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to Sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Chapter 5 Avoidance Action(s) brought by the Liquidating Trust against such parties.

1.7.    <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.8.    <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Bankruptcy Court.

3

1.9.    <u>Bankruptcy Code</u>.   The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 <u>et seq.</u>

1.10.    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.11.    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.12.    <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.13.    <u>BYB Leasing</u>.  BYB Leasing, LLC, the debtor in bankruptcy case no. 23-30408.

1.14.    <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.15.    <u>Causes of Action</u>.  Means any and all claims, rights, legal and equitable defenses, offsets, recoupments, actions in law or equity or otherwise, choses in action, obligation, guaranty, controversy, demand, action suits, damages, judgments, third-party claims, counter-claims, cross-claims against any Person, whether known or unknown, liquidated or unliquidated, foreseen or unforeseen, whether based on legal or equitable relief, whether arising under the Bankruptcy Code or federal, state, common, or other law or equity.

1.16.    <u>Chapter 5 Avoidance Actions</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, including any claims against "insiders" as defined under section 101(31) of the Bankruptcy Code, but excluding any claims against officers and directors that do not otherwise arise under Chapter 5 of the Bankruptcy Code.

1.17.    <u>Chapter 11 Cases</u>.  The Debtors' jointly administered bankruptcy cases under Chapter 11 of the Bankruptcy Code which is pending before the Bankruptcy Court (Case Nos. 23-30407 and Case No. 23-30408), in which the Debtors are the debtors in possession.

1.18.    <u>Claim</u>.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.19.    <u>Class</u>.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

4

1.20.  <u>Committee</u>.  The Official Committee of Unsecured Creditors appointed on July 18, 2023, pursuant to that Order Appointing Creditors' Committee [Doc. 47].

1.21.  <u>Confirmation Date</u>.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.22.  <u>Confirmation Hearing</u>.  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.23.  <u>Confirmation Order</u>.  An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24.  <u>Contingent Claim</u>.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.25.  <u>Creditor</u>.  Any Person that holds a Claim against the Estate.

1.26.  <u>Cure Payment</u>.  All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code.

1.27.  <u>Debtor</u>.  Refers to Tantum Companies, LLC.

1.28.  <u>Debtors</u>. Refers collectively to Tantum Companies, LLC and BYB Leasing, LLC.

1.29.  <u>Disbursement Agent</u>. The Reorganized Debtor or that person approved or selected by the Court who shall perform the duties and have the rights and obligations described herein.

1.30.  <u>Disclosure Statement</u>.  The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to Section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.31.  <u>Disputed Claim</u>.  A Claim which is the subject of a timely objection interposed by a trustee, debtor in possession, or appropriate party in interest, if at such time such objection remains unresolved; <u>provided</u>, <u>however</u>, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code; <u>provided, further</u>, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.32.  <u>Distribution Date</u>.  With respect to any Allowed Claim, each date on which a distribution is made with respect to such Allowed Claim, including the Effective Date, on which certain distributions of cash and other assets are to be made by the Estate.

1.33.  <u>EBITDA</u>.  The Reorganized Debtor's earnings before interest, taxes, depreciation, and amortization.

1.34.    Effective Date.  The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

1.35.    Estate.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.  The property of the Debtor's Estate shall be vested in the Reorganized Debtor upon the occurrence of the Effective Date of the Plan, except as otherwise provided in this Plan.

1.36.    Final Distribution.  The distribution made to the Liquidating Trust and/or holders of Claims pursuant to the Plan which, after making such distribution the Reorganized Debtor determines to be the final distribution to be made to Claimants pursuant to the Plan.

1.37.    Final Order.  An order which is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.38.    General Unsecured Claim.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or any other Claim listed in Section 507 of the Bankruptcy Code.  Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim and if such claim is timely filed).

1.39.    Liquidating Trust.  Refers to the grantor trust to be created on the Plan's Effective Date in accordance with the provisions of Article 5 of the Plan and the Liquidating Trust Agreement.

1.40.    Liquidating Trust Agreement.  Refers to the trust agreement that defines the powers, duties and responsibilities of the Liquidating Trustee and the Liquidating Trust.

1.41.    Liquidating Trust Assets.  Refers to the assets identified in Section 5.2 of the Plan, which will vest in the Liquidating Trust on the Effective Date.

1.42.    Liquidating Trustee.  Refers to the person serving in his/her capacity as the trustee under the Liquidating Trust Agreement.

1.43.    Membership Interest.  Any interest in the Debtor represented by membership interests in the Debtor prior to the Petition Date.

1.44.    Non-Tax Priority Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.45.    Other Lien Claimant.  The holder of a claim, other than the First Lien Lender, the First DIP Lender, and the Second DIP Lender, that is determined, by order of the Bankruptcy Court, to be a valid and perfected lien on property of the Estate.

4895-2352-2274, v. 2

1.46.    Other Priority Claims.  Any Claim to the extent entitled to priority in payment under Sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code and not otherwise classified in this Plan.

1.47.    Person.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof, or any other entity.

1.48.    Petition Date.  June 26, 2023, the date of the commencement of these Chapter 11 Cases.

1.49.    Plan.  This Chapter 11 Plan, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.50.    Plan Debtor.  Tantum Companies, LLC.

1.51.    Prepetition Lender.  Guaranty Bank as the lender under the Prepetition Secured Loan.

1.52.    Prime Rate.    All references to the Prime Rate shall mean that rate published by the Wall Street Journal as the "prime lending rate" as of the Effective Date and shall adjust to the rate in effect of each subsequent annual anniversary of the Effective Date.

1.53.    Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.54.    Professional.  Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with Sections 327 and/or 328 of the Bankruptcy Code.

1.55.    Reorganized Debtor.  Tantum Companies, LLC, as reorganized company, re-vested with the assets of the Tantum Estate on the terms set forth this Plan.

1.56.    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor with the Bankruptcy Court in accordance with Section 521(a)(l) of the Bankruptcy Code.

1.57.    Secured Claim.  A Claim, to the extent of the value of any interest in property of the Estate securing such Claim, as determined pursuant to Section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under Section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.58.    Tantum.  Tantum Companies, LLC, the debtor in bankruptcy case no. 23-30407, and the Plan Debtor.

7

1.59.   <u>Taxes</u>.   All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments and governmental charges, together with any interest, penalties, additions to tax, fines and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority.

1.60.   <u>Unsecured Claim</u>.   A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.61.   <u>Unsecured Deficiency Claim</u>.   A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by Section 506(a) of the Bankruptcy Code.

1.62.   <u>Voting Deadline</u>.   The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.63.   <u>Other Definitions</u>.   Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

1.64.   <u>Rules of Interpretation</u>.   For purposes of this Plan, unless otherwise provided herein: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan, the Confirmation Order or otherwise; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section

102 of the Bankruptcy Code (other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this Article I.

     1.65.  <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## UNCLASSIFIED CLAIMS

     2.1.  ***Administrative Claims***.  Administrative Claims are not classified and are not entitled to vote to accept or reject the Plan.  The treatment of and consideration to be received by holders of Allowed Administrative Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.  The Plan Debtor's obligations in respect of such Allowed Administrative Claims shall be satisfied in accordance with the terms of this Plan.

     2.1.1.  ***Administrative Claims Bar Date***.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, <u>including</u> all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Effective Date, must be filed and served on the Plan Debtor, the Committee, and the Bankruptcy Administrator no later than thirty (30) days after the Effective Date.  Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.  The Administrative Claims Bar Date shall <u>not</u> apply to fees and expenses of Professionals incurred <u>after</u> the Confirmation Date.

     2.1.2.  ***Treatment of Administrative Claims***.  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Administrative Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Administrative Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

     2.2.  ***PACA Claim of Gordon Food Service, Inc.***  The PACA claim of Gordon Food Service, Inc. (the "<u>GFS PACA Claim</u>") was previously resolved by the *Consent Order resolving Debtors' Objection to Gordon Food Service, Inc.'s Motion for Order Requiring Immediate Payment or Adequate Protection of PACA Claim* [Doc. 239] (the "<u>GFS Order</u>").  Pursuant to the GFS Order, the Debtors have been making monthly payments towards the GFS PACA Claim that will continue until Plan confirmation.  The remaining balance of the GFS PACA Claim is to be paid in full at the same time that Allowed Administrative Claims are satisfied in accordance with the terms of this Plan.

9

## ARTICLE 3
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

3.1.    ***Class 1: Unsecured Priority Tax Claims.***

      3.1.1.    *Classification.*

Class 1 consists of all Allowed Priority Tax Claims entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

      3.1.2.    *Treatment.*

Each holder of an Allowed Priority Tax Claim shall be paid the Allowed amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in Cash payments commencing forty-five (45) days after the Effective Date, in equal quarterly installments within five (5) years from the Petition Date, and in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code.  Any Claim or demand for penalty related to any Priority Tax Claim, other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code, shall be Disallowed, and the Holder of a Priority Tax Claim shall not access or attempt to collect such penalty from the Debtor, the Estate, or the Debtor's assets and property.

      3.1.3.    *Impairment and Voting.*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

3.2.    ***Class 2: The First DIP Lender***

      3.2.1.    *Classification*

Class 2 consists of the secured claim of Guaranty Bank (the "First DIP Lender") based upon the First DIP Loan providing Tantum Companies with a secured debtor-in-possession loan, as approved by the Court in that *Interim Order (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing Debtors To Use Cash Collateral; (III) Scheduling A Final Hearing Under Bankruptcy Rule 4001(B); and (IV) Granting Related Relief* (the "Interim Order") [Doc. 30] (the "First DIP Loan").

      3.2.2.    *Treatment*

The remaining balance due under the First DIP Loan in the amount of $14,029.15 shall be paid to the First DIP Lender upon the Effective Date.

10

### 3.2.3.  *Impairment and Voting*

Class 2 is unimpaired and is deemed to have accepted the Plan.

### 3.3.     ***Class 3:  Prepetition Secured Lender***.

#### 3.3.1.  *Classification.*

Class 3 consists of the claim of the Prepetition Secured Lender.  The Plan Debtor is obligated to Guaranty Bank for a loan (the "Prepetition Secured Loan") under that (i) certain Loan Agreement dated December 8, 2020, between the Tantum and Guaranty Bank (the "Prepetition Loan Agreement"), and that (ii) certain Promissory Note dated December 8, 2020, granted by the Debtor in favor of Guaranty Bank in the principal amount of $10,400,000 (the "Prepetition Note").  The Prepetition Secured Loan is set to mature on December 8, 2025.  As of the Petition Date, the current outstanding balance due under the Prepetition Loan Agreement and the Prepetition Note was in the approximate amount of $10,861,269.97.  To secure the obligations under the Prepetition Loan Agreement and the Prepetition Note, Tantum granted Prepetition Secured Lender, pursuant to that Security Agreement dated as of December 20, 2020 (the "Security Agreement"), a continuing first priority lien and security interest (collectively, the "Prepetition Lender Lien") in and to substantially all of the Debtors' assets.

#### 3.3.2.  *Treatment.*

The Class 3 claim shall be paid in cash by Tantum in the amount of $500,000.00 on the Effective Date (the "Class 3 Payment") in full satisfaction of the Class 3 Claim; and Prepetition Secured Lender shall waive any unsecured deficiency claim against the Debtors, the Estates or the Liquidating Trust.  Upon the Class 3 Payment, all liens securing the Prepetition Secured Lender's claim shall be deemed satisfied and released.

#### 3.3.3.  *Impairment and Voting.*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.4.     ***Class 4: Guaranty Bank's Equipment Loans.***

#### 3.4.1.  *Classification.*

Class 4 consists of the secured claims of Guaranty Bank based upon four purchase money equipment loans made to Tantum as follows (the "Equipment Loans"):

> 3.4.1.1.    Loan No. (ending) 6003333 ("Loan 6003333") in the total principal amount of $600,917.39, as evidenced by that

11

Promissory Note dated 11/30/21 by Tantum in favor of Guaranty Bank, and that Business Loan Agreement dated 11/30/21 by and between Tantum and Guaranty Bank. Loan 6003333 is secured by a purchase money security interest in certain equipment.

3.4.1.2.  Loan No. (ending) 7003333 ("Loan 7003333") in the total principal amount of $382,039.44, as evidenced by that Promissory Note dated 6/8/22 by Tantum in favor of Guaranty Bank, and that Business Loan Agreement dated 6/8/22 by and between Tantum and Guaranty Bank. Loan 7003333 is secured by a purchase money security interest in certain equipment.

3.4.1.3.  Loan No. (ending) 3201061 ("Loan 3201061") in the total principal amount of $900,082.61, as evidenced by that Promissory Note dated 8/4/21 by Tantum in favor of Guaranty Bank, and that Business Loan Agreement dated 8/4/21 by and between Tantum and Guaranty Bank. Loan 3201061 is secured by a purchase money security interest in certain equipment.

3.4.1.4.  Loan No. (ending) 2203333 ("Loan 2203333") in the total principal amount of $218,541.90, as evidenced by that Promissory Note dated 8/26/22 by Tantum in favor of Guaranty Bank, and that Business Loan Agreement dated 8/26/22 by and between Tantum and Guaranty Bank. Loan 2203333 is secured by a purchase money security interest in certain equipment.

The current balance on the Equipment Loans is $1,845,257.15.

3.4.2.  *Treatment*

Guaranty Bank's claim will be bifurcated. Guaranty Bank shall have an allowed secured claim as of the Effective Date in the total amount of $1,291,167.99 (the "Allowed Equipment Secured Claim"), which shall be paid from the Reorganized Debtor's operational cash flows as follows:

3.4.2.1.  Interest Rate:  3.0% fixed

3.4.2.2.  Payment Terms.  The Allowed Equipment Secured Claim will be paid as follows:

3.4.2.3.  Year 1:  Monthly interest only payments.

3.4.2.4.  Starting in year 2: A 10 year amortization schedule of principal and interest payments with a balloon payment of the balance of the allowed secured claim due upon the maturity date.

4895-2352-2274, v. 2

3.4.2.5.    <u>Maturity Date</u>.  On the 4th anniversary of the Effective Date, provided that the Allowed Equipment Secured Claim may be repaid earlier than the Maturity Date without penalty.

3.4.2.6.    <u>Retention of Liens</u>.  Guaranty Bank shall retain all existing liens, security interests, and encumbrances, the equipment under the Equipment Loans, and the Plan Debtor will stipulate that such liens, encumbrances, and security interests are properly perfected.

3.4.2.7.    <u>Deficiency Claim</u>.  Guaranty Bank will have an Allowed Unsecured Claim representing its deficiency claim in the amount of $554,089.16.

3.4.3.  *Impairment and Voting.*

Class 4 is impaired by the Plan. The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

3.5.    ***Class 5: Allowed General Unsecured Claims.***

3.5.1.  *Classification.*

Class 5 consists of all Allowed General Unsecured Claims.

3.5.2.  *Treatment.*

Holders of Allowed General Unsecured Claims in Class 5 shall receive a *pari passu* distribution of the Liquidating Trust Assets from the available cash on hand of the Liquidating Trust after the payment of the Liquidating Trustee's fees and expenses, the fees and expenses of any professionals retained by the Liquidating Trustee, and any other costs, expenses or obligations incurred by the Liquidating Trust. The Liquidating Trustee shall have the right to make one or more interim distributions to the holders of Allowed Class 5 Claims in his or her sole discretion.

3.5.3.  *Impairment and Voting.*

Class 5 is impaired by the Plan. The holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

3.6.    ***Class 6: Claims of Axum***

3.6.1.  *Classification*

Class 6 consists of the following claims held by Axum Capital Partners Fund I, LP (the "<u>Axum Fund</u>") and its affiliates and any designated entities (collectively, "<u>Axum</u>").

13

      3.6.1.1.     After the Petition Date, the Axum Fund provided a capital contribution to the Plan Debtor (the "Capital Contribution") pursuant to that *Order (I) Authorizing the Debtors to Obtain New Postpetition Capital and (II) Granting Related Relief* [Doc. 201].   As of the date hereof, the amount of the Capital Contribution provided by the Axum Fund to the Plan Debtor was in the amount of $71,208.10.

      3.6.1.2.     Prior to the Petition Date, the Axum Fund made certain unsecured loans to the Plan Debtor as evidenced by that Promissory Note dated December 15, 2022 (the "Axum Loan").  As of the date hereof, the balance due under the Axum Loan is in the amount of $644,393.63.

      3.6.1.3.     Additionally, as set forth in section 8.5, to the extent that the Debtors are unable to fund the Class 3 Payment and/or the cost of administration of the bankruptcy cases necessary to obtain confirmation of the Plan, the Axum Fund will provide up to $930,000.00 in funding to the Plan Debtor for the purpose of fulfilling such obligations.

     3.6.2.  *Treatment.*

The Class 6 Claims will be satisfied by the issuance of 100% of the membership interests in the Reorganized Debtor to Axum Capital Partners Fund I, L.P., or its designee, and all obligations owed on the Class 6 Claims will be extinguished.  For the avoidance of doubt, Axum shall not have any Allowed General Unsecured Claims in Class 5 of the Plan.

     3.6.3.  *Impairment and Voting*

Class 6 is impaired by the Plan. The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

    3.7.    ***Class 7: Membership Interests in the Debtor***.

     3.7.1.  *Classification.*

Class 7 consists of the 100% Membership Interests in the Plan Debtor held by Tantum Holdings, LLC.

     3.7.2.  *Treatment*.

The Membership Interest shall be fully extinguished under this Plan.

     3.7.3.  *Impairment and Voting.*

Class 7 is impaired by the Plan. The holder of Class 7 Claims are deemed to reject the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1.    ***Impaired Classes Vote.***   Each holder of a Claim or interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2.    ***Acceptance by Impaired Classes of Claims.***   Acceptance of this Plan by any impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3.    ***Designation of Classes Entitled to Vote.***   Classes 1, 3, 4, 5, and 6 are impaired, and the holders of Claims and interests in those Classes are entitled to vote on the Plan.

4.4.    ***Nonconsensual Confirmation.***   With respect to any Impaired Class, including any Class of Claims or interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan using the cramdown provision of § 1129(b) of the Bankruptcy Code with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

## ARTICLE 5
## THE LIQUIDATING TRUST

5.1.    ***Establishment of the Liquidating Trust***.   On the Plan's Effective Date, the Liquidating Trust will be formed as set forth below for the sole and exclusive benefit of the holders of Allowed General Unsecured Claims classified in Class 5 of the Plan.  The Liquidating Trust will be governed by the terms of the Plan and the Liquidating Trust Agreement, a copy of which is attached hereto as Schedule 5.1.

5.2.    ***The Liquidating Trust Assets***.   The term "Liquidating Trust Assets" shall mean and refer to the following assets:

(a) $24,008.01 currently held in trust by Moon Wright & Houston, PLLC related to a prior preference settlement payment;

(b) $250,000.00 shall be provided by the Axum Fund on the Effective Date;

(c) $850,000 shall be paid to the Liquidating Trust by the Reorganized Debtor monthly for 60 months, with payments commencing in the first full month after the Effective Date on the following terms:

     i.   Year 1: $150,000.00 shall be paid in equal monthly installments of $12,500.00;

  ii. Years 2-5: $175,000.00 per year shall be paid in monthly installments of $14,583.33 per month; and

  iii. Each monthly payment shall be due on or before the fifth day of the month.

(d) All Chapter 5 Avoidance Actions; and

(e) All Causes of Action that accrue in the Liquidating Trust on or after the Effective Date.

 5.3. ***Creation of the Liquidating Trust.***

 (a) On the Effective Date: (i) the Liquidating Trust shall be created and established by the execution and delivery of the Liquidating Trust Agreement and any other necessary action, subject to the provisions of the Plan; (ii) all Liquidating Trust Assets shall be transferred to the Liquidating Trust free of all Claims, Liens, Encumbrances and Interests for the sole and exclusive benefit of Holders of Allowed General Unsecured Claims against Tantum classified in Class 5 of the Plan. The Liquidating Trust shall reduce to Cash or otherwise liquidate the Liquidating Trust Assets and distribute such liquidated assets in accordance with and subject to the terms and provisions of the Plan and the Liquidating Trust Agreement.

 (b) As of the Effective Date, the Liquidating Trust shall be authorized to and responsible for (i) liquidating or otherwise reducing to Cash the Liquidating Trust Assets, (ii) filing, prosecuting and settling the Chapter 5 Avoidance Actions, (iii) filing, prosecuting and settling any Causes of Action that accrue in the Liquidating Trust on or after the Effective Date, (iv) paying all expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, without further order of the Bankruptcy Court, (v) making distributions to Holders of Allowed General Unsecured Claims in Class 5 of the Plan, (vi) overseeing the continued liquidation to Cash of all other Liquidating Trust Assets, (vii) reviewing, settling, resolving and objecting to Claims that have not, as of the Effective Date, been resolved, (viii) enforcing the terms of the Plan and the Post-Confirmation Revolving Credit Loan, and (ix) taking any other action contemplated by or reasonably necessary to carry out the terms of the Plan or the Liquidating Trust Agreement.

 (c) All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust in accordance with the Liquidating Trust Agreement. The costs and expenses incurred by the Liquidating Trustee in administering, maintaining or liquidating the Liquidating Trust Assets, including the reasonable fees and expenses of the Liquidating Trustee, and any professionals, attorneys, accountants, consultants and agents retained by the Liquidating Trustee incurred in connection with the Liquidating Trust Assets, and taxes, levies and assessments related to the Liquidating Trust Assets, shall be paid from the Liquidating Trust Assets.

 (d) The Liquidating Trustee shall make distributions from the Liquidating Trust to the holders of Allowed General Unsecured Claims classified in Class 5 of the Plan. Such distributions shall be made at such times and intervals as determined by the Liquidating Trustee in his or her sole discretion; provided however, that the Liquidating Trust is required to distribute to the holders of Allowed General Unsecured Claims in Class 5 on account of their interests in the Liquidating Trust the proceeds of any litigation and the proceeds of the

sale of any Liquidating Trust Assets no later than the sixtieth (60th) day after the entry of the Final Decree. Prior to such date, the Liquidating Trustee, in his or her business judgment when it is cost effective to do so, shall be authorized to make one or more interim distributions.

(e)     For federal income tax purposes, it is intended that the Liquidating Trust be classified as a grantor trust and a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if there was a deemed transfer of the Liquidating Trust Assets to the beneficiaries followed by the deemed transfer of such Liquidating Trust Assets by the beneficiaries to the Liquidating Trust. Accordingly, the beneficiaries will be treated, for federal income tax purposes, as grantors and owners of their respective share of the Liquidating Trust Assets. It is anticipated that the Liquidating Trust Assets will consist primarily of unasserted claims of unascertainable or zero value and thus the Liquidating Trustee anticipates ascribing zero value to such Liquidating Trust Assets as of the date of transfer. The valuation ascribed to the Liquidating Trust Assets shall be used consistently by the Liquidating Trust and the beneficiaries of the Liquidating Trust for all Federal income tax purposes. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose, and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term.

(f)     The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will send, to the extent required, to each beneficiary of the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(g)     The beneficial interests of the Liquidating Trust shall be nontransferable and any such transfer shall be disregarded by the Liquidating Trustee except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

5.4.    *The Liquidating Trustee*.

(a)      The Committee shall have the exclusive and unilateral authority to select the Liquidating Trustee, subject only to approval by the Bankruptcy Court.  On the Effective Date, Jason M. Torf, Esq. shall be appointed as the Liquidating Trustee.  The Liquidating Trustee shall be compensated on the following terms: (a) a monthly fee in the amount of (i) $7,500.00 per month for the first six months, and (ii) $5,000.00 per month for the remainder of the engagement, (b) a 5% contingency fee calculated solely on any gross litigation recoveries that are actually collected by the Liquidating Trustee (based on settlements or litigation), provided however, that the contingency fee shall not include or be based on the Plan payments to be made by Axum or the Debtor, and (c) reimbursement of all reasonable out of pockets costs and expenses incurred by the Liquidating Trustee for serving in the capacity as Liquidating Trustee.  This compensation structure may be re-evaluated by the Bankruptcy Court on a prospective basis only after the passage of twenty-four months from the Plan's Effective Date.  The compensation structure may only be re-evaluated upon the filing of a motion by the Liquidating Trustee or a beneficiary of the Liquidating Trust.  In the event a motion to re-evaluate the compensation structure is filed, the Bankruptcy Court will resolve the motion by applying the standards governing the reasonableness of compensation to be paid to officers set forth in section 330 of the Bankruptcy Code and the applicable case law interpreting the statute

(b)      On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and any other documents necessary to be appointed as the Liquidating Trustee.  The Liquidating Trustee, once appointed, shall act as trustee on behalf of the Liquidating Trust to carry out its obligations and exercise its rights in accordance with, and subject to, this Plan, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Liquidating Trustee in his or her official capacity, with respect to his/her status, duties, powers, acts or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court. The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Liquidating Trust Agreement and the Plan. Subject to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to hire such professionals as he or she deems necessary to assist him/her in carrying out the Liquidating Trustee's duties.

(c)      Unless otherwise authorized by the Bankruptcy Court, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to investing in demand and time deposits.

(d)      The Liquidating Trustee shall be authorized and empowered and has standing as a representative of the Estate, to pursue and prosecute, to settle, or to decline to pursue, all Chapter 5 Avoidance Actions or Causes of Action that accrue in the Liquidating Trust on or after the Effective Date, whether or not such claims have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by the Debtor or the Debtor's Estate, if applicable. The Liquidating Trustee may pursue or decline to pursue all

18

Chapter 5 Avoidance Actions or Causes of Action that accrue in the Liquidating Trust on or after the Effective Date, and may settle, release, sell, assign, otherwise transfer or compromise such claims or rights in the Liquidating Trustee's business judgment.

(e)     Upon the Effective Date, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Chapter 11 Case. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

5.5.     *Final Administration of Liquidating Trust*.   Upon full administration of the Liquidating Trust Assets, the Liquidating Trust shall be deemed terminated without further notice, and the Liquidating Trustee shall thereupon be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan, on the later of the following to occur:  (i) the ninetieth (90th) day following entry of the Final Decree, (ii) the filing of the final tax return of the Liquidating Trust, and (iii) such date set by Order of the Bankruptcy Court. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

## ARTICLE 6
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1.     *Assumption / Rejection of Contracts.* The unexpired leases set forth in Schedule 6.1, Exhibit A shall be assumed by BYB Leasing, and assigned to the Reorganized Debtor as of the Effective Date.

The executory contracts and/or unexpired leases set forth in Schedule 6.1, Exhibit B, shall be assumed by the Reorganized Debtor as of the Effective Date.

Nothing in the Plan, any exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such exhibit creates any obligation or liability on the part of the Debtors, the Reorganized Debtor, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Reorganized Debtor as of the Effective Date and shall be fully enforceable by the Reorganized Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such

premises.

All executory contracts and/or unexpired leases of the Debtors, to the extent not otherwise assumed in these bankruptcy cases, shall be deemed rejected as of the Effective Date.

The Debtors reserve the right at any time before the Effective Date to update this Plan with a modified "Schedule 5.1: Executory Contracts and Unexpired Leases to be Assumed" to identify any executory contract or unexpired lease and to indicate the assumption of such executory contract or unexpired lease under the Plan. The Debtors shall provide notice of any such update of Plan Schedule 5.1: Executory Contracts and Unexpired Leases to be Assumed to the other party or parties to the affected executory contract and/or unexpired lease, and to the Bankruptcy Administrator and counsel to the Committee.

6.2. ***Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance.*** Cure Payments for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtors or otherwise addressed elsewhere in this Plan, shall be made by the Reorganized Debtor on the Effective Date. Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment not otherwise paid is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtors, the Estates, the Reorganized Debtor, and its Assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtors, the Debtors: (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtors may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order, provided however that the Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to file and/or amend the Plan "Schedule 5.1: Executory Contracts and Unexpired Leases to be Assumed" to withdraw from the assumption of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

6.3. ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute

20

approval of such assumptions and assumptions and assignments pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption and/or assumption and assignment is in the best interest of the Debtors, the Estates, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtors and no Cure Payments beyond those set forth in Schedule 6.1 owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption and/or assumption and assignment is in the best interest of the Plan Debtor and its estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counterparty to each assumed and/or assumed and assigned executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed and/or assumed and assigned under the Plan or during the Chapter 11 Cases constitute valid contracts and leases, as applicable, enforceable by the Plan Debtor against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as not being in the best interest of the estate.

6.4.    ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*** Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtors, the Liquidating Trust, the Reorganized Debtor, and their assets and the holders of any such Claims are barred from receiving any distributions under the Plan. Nothing contained herein should be construed to extend any deadline or bar date that was previously set by the Bankruptcy Court to file a Claim for any rejection damages.

6.5.    ***Disguised Financing Arrangements.*** For the avoidance of doubt, this Article 6 shall not apply to any purported lease, the terms of which contain indicia of a disguised financing arrangement, including, but not limited to, that the lessee has an option to become the owner of the goods for no additional consideration or nominal consideration upon compliance with the lease agreement. To the extent that any "lessor" is classified in Article III as holding a secured claim, such "lessor" shall be deemed to be a secured creditor and shall be treated as a secured creditor rather than a "lessor".

## ARTICLE 7
## MEANS FOR EXECUTION AND
## IMPLEMENTATION OF THE PLAN

7.1.    ***Operation of the Business.*** The Debtor operates a quick service, made to order

restaurant chain, doing business primarily in the Southeast United States as "Back Yard Burgers." The Plan Debtor operates four corporate run stores located in Mississippi and Tennessee and also has franchise contracts with approximately 8 franchisees located in North Carolina, Florida, Missouri, Kentucky, Arkansas, and Illinois.

The Reorganized Debtor plans to continue its operations following the confirmation of the Plan. Based on the projected financials of the Reorganized Debtor, the operations contemplated in this Section 7.1 will generate sufficient operating revenue to fund all payments required by the Reorganized Debtor under this Plan.

7.2. ***Identity of Insiders to be Employed.*** As of the Petition Date, Mark Cote was the Chief Executive Officer. Mr. Cote has continued to serve in such role during the course of the Chapter 11 Case and is proposed to continue in such role following the Effective Date as the Chief Executive Officer of the Reorganized Debtor. Mr. Cote has more than 45 years of combined experience in the Reorganized Debtor's industry. As such, Mr. Cote has a skill set and base of knowledge that is invaluable to the Plan Debtor's successful reorganization, consistent with the interest of creditors and equity security holders and with public policy. Mr. Cote will be compensated consistent with the compensation awarded during the course of the Chapter 11 Case, and commensurate with industry standards.

7.3. ***Authority to Act Following Confirmation Date.*** Upon confirmation of this Plan, the Reorganized Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan.

7.4. ***Authority to Act Following Effective Date.*** As of the Effective Date, the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.5. ***The Axum Fund's Commitment to Fund Claim 3 Payment, Administrative Expense Claims, and Required Payments to Obtain Confirmation.*** To the extent that the Debtors are unable to fund the payment of the Claim 3 Payment, the cost of administration, and any other expenses required for the confirmation of the Plan, the Axum Fund will provide up to $930,000.00 of funding to the Debtors for purposes of paying such amounts.

7.6. ***Post-Confirmation Revolving Loan.*** Axum shall arrange for, or the Axum Fund shall provide the Reorganized Debtor with a revolving credit line in the maximum amount of $500,000.00 (the "Post-Confirmation Revolving Loan"). The Post-Confirmation Revolving Loan shall be available to the Reorganized Debtor, to the extent necessary, to fund expenses of the Reorganized Debtor incurred in the ordinary course of business and/or to fund payments due under the Plan. Both the Reorganized Debtor and the Liquidating Trust/Liquidating Trustee may enforce the obligation of Axum to fund a draw request by the Reorganized Debtor on the Post-Confirmation Revolving Loan. The Post-Confirmation Revolving Loan can only be used to pay expenses incurred in the ordinary course of business of the Reorganized Debtor after the Effective

Date of the Plan and any payments due to the Liquidating Trustee in accordance with the Plan, as needed and requested by the Reorganized Debtor. The Bankruptcy Court will maintain jurisdiction to enforce the Post-Confirmation Revolving Loan. The Reorganized Debtor may draw on the loan and repay borrowed sums subject to the conditions set forth in section 7.8 below. The Post-Confirmation Revolving Loan shall be memorialized by the Loan Agreement attached hereto as Schedule 7.6.

7.7. **Reporting Requirements**. The Reorganized Debtor shall provide reporting to the Liquidating Trust as follows:

7.7.1. 30 days after the end of each month, a monthly accounting of the Post-Confirmation Revolving Loan in the form attached hereto as Schedule 7.7.1, together with copies of the applicable bank records.

7.7.2. 30 days after the end of each month, a spreadsheet or summary disclosing each Plan payment made pursuant to Article 3 of the Plan, and each payment made to Axum during the applicable month, which includes the date, amount, and recipient of each payment.

7.7.3. 30 days after the end of each quarter, quarterly financial statements in the form attached hereto as Schedule 7.7.3.

7.7.4. Such other documents/information as are reasonably requested by the Liquidating Trustee.

7.8. **Payments to Axum.** The Reorganized Debtor may make payments to Axum after the Effective Date consisting of rent payments on the sublease of the office space, management fees (if applicable) based upon 10% of EBITDA of the Reorganized Debtor, Post Confirmation Revolving Loan repayments, and reasonable expense reimbursements subject to the following conditions:

7.8.1. No payments may be made to Axum if the Plan is then in default;

7.8.2. No payments may be made to Axum unless all post-Effective Date taxes and other governmental charges, fees, licenses, and obligations are current; and

7.8.3. No payments shall be made to Axum if the Post-Confirmation Revolving Loan is fully drawn unless the reconciled cash balance in the Reorganized Debtor's bank accounts exceeds $100,000.00.

7.9. **Status of Liens of Secured Tax Claims, First Lien Lender, and Other Lien Claimants.** Unless otherwise provided in this Plan, or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Claimant on the Estate assets shall retain the same validity, priority and extent that existed on the Petition Date. All other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

7.10. **BYB Leasing LLC.** As of the Petition Date, BYB Leasing had no assets other than certain leases of non-residential real property. After the Petition Date, BYB Leasing rejected all leases of non-residential real property with the exception of one lease identified on Schedule 6.1,

Exhibit A.  Under the Plan, BYB Leasing shall assume and assign such lease to the Reorganized Debtor on the Effective Date.

Any creditors of BYB Leasing shall receive no distribution under the Plan except for any distribution based upon allowed claims against the Plan Debtor and/or any payments in relation to an assumed and assigned lease to the Reorganized Debtor.  For the avoidance of doubt, BYB Leasing's assets and liabilities are not being substantively consolidated with the assets and liabilities of Tantum for any purpose under the Plan.

Within ten business days from the Effective Date, BYB Leasing shall file a motion seeking the dismissal of its bankruptcy case.

7.11   ***Liquidating Trust Funding Obligations***.  On the Effective Date of the Plan: (i) the Axum Fund shall pay the sum of $250,000.00 to fund the payment due the Liquidating Trust on the Effective Date, and (ii) the Reorganized Debtor shall be obligated to make the stream of payments set forth in Section 5.2(c) of the Plan to the Liquidating Trust totaling $850,000.00, in the amounts and on the terms set forth in the Plan.

## ARTICLE 8
## RESOLUTION OF CLAIMS AND INTERESTS

8.1.   ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.***  Prior to the Effective Date, the Debtors shall have the exclusive right to object to the allowance, amount or classification of Claims and interests asserted in the Chapter 11 Cases, and such objections may be litigated to Final Order by the Debtors, or compromised and settled in accordance with the business judgment of the Debtors, subject to further order of the Bankruptcy Court.  After the Effective Date, the Reorganized Debtor shall have the exclusive right to object to any Claim other than General Unsecured Claims, and such objections may be litigated to Final Order by the Reorganized Debtor, or compromised and settled in accordance with the business judgment of the Reorganized Debtor, subject to further order of the Bankruptcy Court.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtor to Claims, other than General Unsecured Claims, shall be filed no later than ninety (90) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor, without notice, upon ex *parte* motion.

8.2.   ***Objections to General Unsecured Claims.***   After the Effective Date, the Liquidating Trustee shall have the exclusive right to object to the allowance, amount or classification of General Unsecured Claims in the Chapter 11 Cases, and such objections may be litigated to Final Order by the Liquidating Trustee, as applicable, or compromised and settled in accordance with the business judgment of the Liquidating Trustee, subject to further order of the Bankruptcy Court.

8.3.   ***Estimation of Disputed Claims and Interests.***  The Debtors, the Reorganized Debtor, and/or the Liquidating Trustee, as the case may be, may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed,

contingent or unliquidated Claim or interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors, the Reorganized Debtor, or the Liquidating Trustee, have previously objected to such Claim or interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.4.    ***No Distribution on Account of Disputed Claims and Interests.***  Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of an Allowed General Unsecured Claim, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Liquidating Trustee shall set aside or reserve a portion of the consideration payable to the holders of Allowed General Unsecured Claims to be held in a disputed claims reserve in an amount sufficient to pay to the holders of all Disputed General Unsecured Claims they may be entitled to if their respective Claims and interests were ultimately to be allowed in full by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1.    ***Ownership of the Reorganized Debtor.***  In consideration of its waiver of all claims in Class 6, Axum Capital Partners Fund I LP, or a designated affiliate entity will be the sole member of the Reorganized Debtor.

9.2.    ***Vesting of Assets and Retained Causes of Action - The Reorganized Debtor.***  On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all assets of the Debtors shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order.  From and after the Effective Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed subject to the terms of the Plan.

Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as the Reorganized Debtor deems appropriate, any and all claims and Causes of Action, whether arising before or after the Petition Date, but not including the Chapter 5 Avoidance Actions being transferred and assigned to the Liquidating Trust, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and Causes of Action specified in the Plan or any Plan exhibit, and the Reorganized Debtor shall not be required to seek further approval of the Bankruptcy Court for such actions.

9.3.    ***Binding Effect.*** Subject to the occurrence of the Effective Date, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.4.     *Discharge of the Plan Debtor.*  Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Plan Debtor, the Debtor, or the assets, properties, or interests in, or property of the Plan Debtor, or the Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date.  Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Plan Debtor (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Plan Debtor, or any conduct for which the Plan Debtor may be deemed to have strict liability under any applicable law), and all interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and distributions expressly provided for or due under this Plan, and (b) Claims and interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. Except as expressly provided herein or in the Confirmation Order, all Entities who have held, or may hold Claims against the Plan Debtor are permanently enjoined, precluded and forever barred from asserting against the Plan Debtor, or the Reorganized Debtor, or the assets, properties, or interests in or property of the Plan Debtor or the Reorganized Debtor of any nature whatsoever, any Claims or interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

9.5.     *Indemnification Obligations.*  Subject to the occurrence of the Effective Date, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtors, shall be deemed to be and treated as executory contracts that are assumed by the Reorganized Debtor and assigned to the Reorganized Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan.  Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.6.     *Term of Certain Injunctions.*  Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

26

9.7.   ***No Successor Liability.***  Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Plan Debtor nor the Reorganized Debtor will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present subsidiaries, employees, or agents relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present subsidiaries, employees, or agents, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date.  The Reorganized Debtor shall not have successor or transferee liability of any kind or character, for any Claims; *provided, however,* that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

9.8.   ***Preservation of All Causes of Action Not Expressly Settled or Released.***  For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, unless a claim or cause of action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, and specifically excluding the Chapter 5 Avoidance Actions that are being transferred and assigned to the Liquidating Trust, the Reorganized Debtor expressly reserves such claim or cause of action for adjudication or pursuit by the Reorganized Debtor after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Reorganized Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Similarly**,** unless a claim or cause of action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Liquidating Trust shall have the right to pursue the Chapter 5 Avoidance Actions and any other Causes of Action that accrue in the Liquidating Trust on or after the Effective Date, and this Plan expressly reserves such claim or Cause of Action for adjudication or pursuit by the Liquidating Trust after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Liquidating Trust and/or Liquidating Trustee shall be appointed for the purposes of pursuing any and all such Chapter 5 Avoidance Actions and any claims and Causes of Action that accrue in the Liquidating Trust on or after the Effective Date under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor or Liquidating Trust, as applicable, subsequent to the Effective Date and may, to the extent not theretofore

specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

## ARTICLE 10
## EFFECTIVE DATE OF THE PLAN

10.1.   *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date. In any event, for ease of accounting, the Effective Date shall be the first day of a month. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtor.

10.1.1.   The Confirmation Order shall have become a Final Order.

10.1.2.   The Bankruptcy Court shall have made the statutorily required findings of fact and conclusions of law in connection with the confirmation of this Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

10.1.3.   All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by non-debtor parties in form and substance satisfactory to the Debtor.

10.1.4.   Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.2.   *Filing of Notice of Effective Date.* Within five (5) Business Days of the occurrence of the Effective Date, the Reorganized Debtor shall file a notice of occurrence of the Effective Date signed by counsel for the Plan Debtor and, if different, counsel to the Reorganized Debtor in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

10.3.   ***Revocation of Confirmation Order or Withdrawal of Plan.***  The Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case.  If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims and interests shall remain unchanged, all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1.   ***Payment of Statutory Fees.***  All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date by the Debtor, as, when and in the amount required by applicable law.

11.2.   ***Remedies and Cure Period***.  Upon any default by the Reorganized Debtor or Axum with respect to any obligation imposed by the Plan, the Liquidating Trustee or any affected holder of an Allowed Claim, shall provide written notice of the default to the applicable party and provide a thirty (30) day period to cure the default.  If the applicable party fails to cure the identified default with thirty (30) days from the date of the notice, then the Liquidating Trustee or other affected holder of an Allowed Claim shall be entitled to exercise all rights he/she/it may have under applicable law.

11.3.   ***Notice.***  Any notice required or permitted to be provided to the Debtor or the Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, (c) electronic mail, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

> Tantum Companies, LLC
> c/o Robert A. Cox, Jr.
> Hamilton Stephens Steele + Martin, PLLC
> 525 N. Tryon Street, Suite 1400
> Charlotte, NC 28202
> rcox@lawhssm.com

11.4.   ***Headings.***  The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.5.   ***Governing Law***. Unless a rule of law or procedure is supplied by federal law

29

(including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.6.   ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in its reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.7.   ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor, and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.8.   ***Exemption from Transfer Taxes.*** Pursuant to Section 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

11.9.   ***Further Authorizations.*** The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.10.   ***Successors and Assigns.*** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.11.   ***Modification and Amendment of the Plan.*** Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

## ARTICLE 12
## <u>RETENTION OF JURISDICTION</u>

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1.   ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which the Debtors are party or with respect to which

the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2. *Causes of Action.* To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor or the Liquidating Trustee after the Effective Date.

12.3. *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.* To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent interest, disputed interest in whole or in part, and to determine any and all disputes among Creditors and holders of interests with respect to their Claims and interests.

12.4. *Enforcement/Modification of Plan.*

12.4.1.  To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2.  To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3.  To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4.  To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in these Chapter 11 Cases.

12.4.5.  To hear and determine any issue relating to distributions under the Plan.

12.4.6.  To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7.  To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.5.   ***Compensation of Professionals.***   To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

12.6.   ***Settlements.***   To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or cause of action by the Debtor, the Reorganized Debtor or the Liquidating Trustee.

12.7.   ***Taxes.***   To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

12.8.   ***506(b) Claims.***   To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

12.9.   ***Specific Purposes.***   To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10.   ***Final Decree.***   To enter an order or final decree closing the Chapter 11 Case.


Dated: Charlotte, North Carolina
       September 17, 2024

    HAMILTON STEPHENS
    STEELE + MARTIN, PLLC

    */s/ Robert A. Cox, Jr.*
    Robert A. Cox, Jr. (Bar No. 21998)
    Matthew A. Winer (Bar No. 56222)
    525 North Tryon Street, Suite 1400
    Charlotte, North Carolina 28202
    Telephone: (704) 344-1117
    Facsimile:  (704) 344-1483
    rcox@lawhssm.com
    mwiner@lawhssm.com
    *Attorneys for Debtor and Debtor-in-Possession*


    TANTUM COMPANIES, LLC

    */s/ Mark Cote*
    Mark Cote
    Chief Executive Officer

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>**Tantum Companies, LLC, et al.,**[1]<br><br>Debtors. | Case No. 23-30407<br><br>Chapter 11 |

## DISCLOSURE STATEMENT TO THE
## AMENDED PLAN OF REORGANIZATION OF
## <u>TANTUM COMPANIES, LLC</u>

Dated:  Charlotte, North Carolina

      September 17, 2024

HAMILTON STEPHENS
STEELE + MARTIN, PLLC
Robert A. Cox, Jr. (Bar No. 21998)
Matthew A. Winer (Bar No. 56222)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile:  (704) 344-1483
*rcox@lawhssm.com*
*mwiner@lawhssm.com*
*Counsel for Debtors and Debtors-in-Possession*

---

[1] The Debtors are the following entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Tantum Companies, LLC (8256) and BYB Leasing, LLC (2164).

**IMPORTANT INFORMATION FOR YOU TO READ**

**THE DEADLINE TO VOTE ON THE PLAN IS <u>OCTOBER 14, 2024 AT 5:00 P.M.
PREVAILING EASTERN TIME</u>, UNLESS EXTENDED BY THE PLAN DEBTOR (THE
"<u>VOTING DEADLINE</u>"). FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST
BE ACTUALLY RECEIVED BY COUNSEL FOR THE DEBTORS BEFORE THE
VOTING DEADLINE AS DESCRIBED HEREIN.**

I.    <u>INTRODUCTION</u>[2]

    A.    **General Background**

On June 26, 2023, Tantum Companies, LLC ("<u>Tantum</u>" or "<u>Debtor</u>") and BYB Leasing,
LLC ("<u>BYB Leasing</u>", together with Tantum, the "<u>Debtors</u>"), each filed a voluntary petition for
relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the
Western District of North Carolina. The Debtors continue in possession of their properties and the
management of their business as "Debtors in Possession" pursuant to sections 1107 and 1108 of
the Bankruptcy Code. The Honorable Laura T. Beyer, United States Bankruptcy Judge, has
presided over the Chapter 11 Cases since their inception.

Contemporaneously herewith, the Debtor filed an Amended Plan of Reorganization of
Tantum Companies, LLC. The Plan sets forth the proposed reorganization of Tantum and its
chapter 11 estate and distributions to Creditors (collectively, the "<u>Creditors</u>"). A copy of the Plan
is attached as **<u>Exhibit A</u>** to this Disclosure Statement.

Pursuant to section 1126 of the Bankruptcy Code, Tantum is soliciting acceptances of the
Plan from the Classes of Claims entitled to vote on the Plan. This Disclosure Statement is
submitted pursuant to section 1125 of the Bankruptcy Code in order to provide information of the
kind necessary to enable a hypothetical reasonable creditor to make an informed judgment in the
exercise of his/her/its right to vote on the Plan.

    B.    **Purpose of this Disclosure Statement**

Tantum provides this Disclosure Statement in order to permit eligible parties to make an
informed decision in voting to accept or reject the Plan. This Disclosure Statement is presented to
all Creditors in order to satisfy the requirements of section 1125 of the Bankruptcy Code. Section
1125 of the Bankruptcy Code requires a disclosure statement to provide information sufficient to
enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed
judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon
for any purpose other than as is described above. This Disclosure Statement and the Plan are an
integral package, and they must be considered together for the reader to be adequately informed.

---

[2] All capitalized terms used herein, to the extent not specifically defined herein, shall have the same meaning as
defined in the attached Plan.

No representations concerning Tantum or its properties are authorized by Tantum other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance of the Plan, other than as contained in this Disclosure Statement, should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for Tantum, who shall in turn deliver such information to the Bankruptcy Court for such action as may be appropriate. The information contained in this Disclosure Statement, including the information contained in any exhibits attached hereto, has not been subject to an audit or independent review.  Accordingly, Tantum is unable to warrant or represent that the information concerning Tantum or its financial condition is accurate or complete.  Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only.  Because of the uncertainty and risk factors involved, Tantum's actual results may not be as projected.

Although an effort was made to be as accurate as possible under the circumstances, Tantum does not warrant or represent that the information contained in this Disclosure Statement is correct. The Disclosure Statement contains only a summary of the Plan. Each Creditor is urged to review the Plan prior to casting its vote. The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement unless another time is specified. The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the date of the Disclosure Statement.  Schedules of the assets and liabilities of the Debtors as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the Clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Entities holding or trading in or otherwise purchasing, selling, or transferring claims against, interests in, or securities of Tantum should evaluate this Disclosure Statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the Commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable Laura T. Beyer will hold a hearing on confirmation of the Plan at the United States Bankruptcy Court, Charles Jonas Federal Building, Courtroom 2A, 401 West Trade Street, Charlotte, North Carolina 28202, on **October 23, 2024 at 9:30 a.m**.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the Creditors, and will review the ballot reports concerning votes cast for acceptance and rejection of the Plan.  The hearing may be continued from time to time at the Court's discretion.

## C.    Overview of the Debtor and the Plan

### 1.    *Description of the Debtors*

The Debtors are two separate and privately-held limited liability companies: (i) Tantum Companies, LLC and (ii) BYB Leasing, LLC.  Tantum is the sole member of BYB Leasing. Tantum Holdings, LLC is the sole member of Tantum Companies, LLC.

Tantum is the franchisor of "Back Yard Burgers" ("BYB"), a quick-service/fast casual restaurant chain doing business primarily in the Southeast United States. For over three decades,

3

Back Yard Burgers has established a strong brand presence across its markets predicated on offering guests high-quality flame-grilled burgers and sandwiches. BYB is a pioneer in the "Better Burger" category with a rich history rooted in the idea of offering consumers one-of-a-kind homemade burgers using the highest quality ingredients prepared in a way that tastes just as good as a family could prepare in their own back yard. The company's core mission has remained the same since its founding over thirty years ago, and as a result its customers have come to know and appreciate the "home cooked/backyard style" taste of its product and the breadth of its menu. Back Yard Burgers' customer base is broad and diverse. It serves as a destination for all ages within its communities and offers something for everybody; it serves as a family dining destination, a place for young adults to enjoy good food delivered in a timely fashion at approachable price points, and a lunch destination for professionals. Back Yard Burgers has a unique opportunity to position itself as a higher quality alternative to traditional quick serve offerings and a more convenient alternative to current fast casual options. The Company has developed a strong brand architecture that it believes differentiates BYB from similar concepts based on core fundamental attributes that reflect long-term trends and consumer preferences.

Currently, Tantum operates four corporate owned restaurant stores located in Mississippi, and Tennessee. In addition to the corporate owned stores, Tantum has franchise contracts with 8 franchisees located in North Carolina, Florida, Missouri, Kentucky, Arkansas, and Illinois. Currently, the Debtors employ approximately 162 people. For decades, Back Yard Burgers has and remains a source of employment for many of the citizens within the communities it serves (many of which are small to mid-sized towns/cities). The company hopes it will have the chance to reorganize and continue to provide opportunities for all its team members and help drive economic growth while delivering value for all parties.

BYB Leasing, a subsidiary of Tantum, is the lessee under certain leases of corporate run restaurants. Besides its interests as lessee under such leases, BYB Leasing has no other assets or obligations.

### 2.    *Reasons for the Chapter 11 Filings*

Prior to the Petition Date, Back Yard Burgers, like many restaurant brands, experienced significant and historic headwinds not previously identifiable, unprecedented operational challenges and severe pressure on margins. The government mandated dining room closures to help minimize the spread of the coronavirus not only resulted in material sales declines, but made any chance of dealing with operational issues in the normal course disruptive to the company's guests and employees.

In December, 2020, Tantum obtained a loan from Guaranty Bank & Trust Company ("Prepetition Lender") made through the Main Street Lending Program, which was a loan program established by the Federal Reserve to make loans to small and medium sized business impacted by the Covid-19 pandemic. Guaranty Bank & Trust Company serves as the agent bank administering the Prepetition Loan through the Main Street Lending Program. As of the Petition Date, the balance due to Prepetition Lender was in the approximate amount of $10,861,269.97.

Tantum used the net proceeds from the loan to pay off existing debt at the time, address operational and financial challenges stemming from the COVID-19 pandemic, and fund capital expenditures for existing stores and the opening of new stores. However, the lingering adverse impacts of the pandemic on Back Yard Burgers, as well as material lease exposure from exited

4

locations; management issues; continued historic supply chain constraints; tight labor market and wage inflation; corporate stores already challenged by high rents while requiring significant capex; and significant and unsustainable accounts payable build-up resulting from the pandemic made continued operations outside of bankruptcy unsustainable.

The Debtors therefore determined that the Chapter 11 filings were the only option to avoid the threat to Back Yard Burgers continued operations and to provide the Debtors the opportunity to provide the greatest returns on the claims and interests of all their stakeholders.

### 3.   *Tantum's Proposed Reorganization Pursuant to the Plan*

**The following is a summary of the provisions of the Plan and should not be solely relied on for voting purposes in lieu of a thorough and comprehensive review of the Plan itself. Creditors and Equity Interest holders are urged to read the Plan to ascertain the effect of the Plan on their claims and interests and other provisions of the Plan. Creditors and Equity Interest holders are further urged to consult with their attorneys, tax advisors, financial consultants, or other professionals in order to understand more fully the Plan or the effect of the Plan as to their particular situation.**

The Plan provides that Tantum will continue to operate its business as a Reorganized Debtor, and Mark Cote, the current Chief Executive Officer, will continue in that position for the Reorganized Debtor. Tantum will assume the non-residential real property leases for three of its stores that remain open and any executory contracts that are necessary for the continued operation of the Reorganized Debtor. Tantum will pay any arrearages or other costs required by the Bankruptcy Code to assume and/or take assignment such leases and those executory contracts necessary for the Reorganized Debtor's post-confirmation operations (the "Cure Amounts") on the Effective Date, except as otherwise agreed by Tantum and the counterparty to such contract.

The Plan is based upon Tantum's belief that it has established a comprehensive operational strategy and infrastructure, and a path forward that will best serve the interests of its creditors if it is allowed to reorganize. Tantum's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

Tantum will pay Allowed Administrative Expense Claims and the GFS PACA Claim in full on the Effective Date or upon such other mutually acceptable terms as the parties may agree.

Any and all priority taxes due and owing to the Internal Revenue Service, or any other state, county or city taxing authority shall be paid in full as set forth more fully in Article III. of the Plan.

The Reorganized Debtor will pay the Claim of the Prepetition Secured Lender $500,000.00 in full satisfaction of the Prepetition Secured Lender's Claim, including any deficiency claim, and upon payment of such Claim all liens securing the Prepetition Secured Claim shall be deemed satisfied and released.

The secured claims of Guaranty Bank under the Equipment Loans shall be paid as outlined in Article III. of the Plan and summarized below.

The holders of Allowed General Unsecured Claims against Tantum will be paid on the terms set forth in Article III. of the Plan and summarized below. A Liquidating Trust shall be

established for the benefit of Allowed General Unsecured Claims to facilitate the proposed Plan treatment. Payments totaling $1,100,000.00 shall be made over the life of the Plan to the Liquidating Trust for the benefit of Allowed General Unsecured Claims as follows: $250,000.00 to be provided by Axum Capital Partners Fund I, L.P. (the "Axum Fund") shall be paid to the Liquidating Trust by Axum on the Effective Date of the Plan; and $850,000 shall be paid by the Reorganized Debtor monthly for 60 months starting the first full month after the Effective Date on the following terms:

Year 1: $150,000.00 shall be paid in equal monthly installments; and
Years 2-5: $175,000.00 per year shall be paid in equal monthly installments.

Additionally, all Chapter 5 Avoidance Actions and $24,008.01 currently held in trust by Moon Wright & Houston, PLLC, counsel for the Committee, shall vest in the Liquidating Trust for the benefit of Allowed General Unsecured Claims.

Under the Plan, in satisfaction of any pre-petition claims owing to the Axum Fund, and its affiliates (together "Axum"), as well as all post-petition capital contributions made by Axum prior to the Effective Date, Axum or its designee will be issued 100% of the membership interests in the Reorganized Debtor.

The current membership of Tantum Holdings in Tantum shall be extinguished.

### 4.    *BYB Leasing, LLC – Assumption and Assignment of Lease*

As of the Petition Date, BYB Leasing had no other assets other than certain leases of non-residential real property. Besides the lease of real property associated with a BYB store located in Batesville, Mississippi (the "Batesville Lease"), all other leases to which BYB Leasing was a party, to the extent not terminated prior to the Petition Date, were rejected in the bankruptcy case. Under the Plan, BYB Leasing shall assume and assign the Batesville Lease to the Reorganized Debtor on the Effective Date. Any creditors of BYB Leasing shall receive no distribution under the Plan except for any distribution based upon allowed claims against the Plan Debtor and/or any payments in relation to an assumed and assigned lease to the Reorganized Debtor. Please take note that BYB Leasing's assets and liabilities are not being substantively consolidated with the assets and liabilities of Tantum for any purpose under the Plan.

Within ten (10) business days from the Effective Date, BYB Leasing shall file a motion seeking the dismissal of its bankruptcy case.

### D.    **Distributions Under The Plan**

Summaries of the classification and treatment of Claims under the Plan, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Section III of this Disclosure Statement below. The amounts listed are estimates based on information available as of the filing of this Disclosure Statement. The actual amounts could be substantially different, causing the ultimate distributions to creditors to be significantly higher or lower than estimated.

Creditors and other parties in interest are urged to review the contents of the Plan itself, which is attached as **Exhibit A** to this Disclosure Statement, in its entirety. To the extent that any

6

provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

E.       **Creditors Entitled To Vote On The Plan**

Holders of Claims or Interests in Classes 1, 3, 4, 5 and 6 may be or are impaired by the Plan and, as such, Tantum is soliciting votes from holders of Allowed Claims in these Classes as set forth in Articles III and IV of the Plan.

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met. However, Tantum may seek to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan. For more information on "cram down," please refer to Section I.F.2 below.

F.       **Instructions Regarding Voting, Confirmation, and Objections to Confirmation**

1.       *Voting Instructions*

Before voting, you should read this Disclosure Statement and its exhibits, including the Plan and its exhibits, in their entirety. Ballots must be received by the respective parties no later than **5:00 p.m. (EST) on October 14, 2024**. You may vote on the Plan by completing and mailing the enclosed Ballots to:

Robert A. Cox, Jr.
Hamilton Stephens Steele + Martin, PLLC
525 N. Tryon Street, Suite 1400
Charlotte, NC  28202

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan. You may NOT cast ballots or votes orally. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement. If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting counsel for the Debtors, Robert A. Cox, Jr., at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. Allowance of a Claim or Interest for voting purposes does not necessarily mean that the Claim will be Allowed or Disallowed for purposes of distribution under the terms of the Plan. Any Claim to which an objection has been or will be made will be allowed for distribution only after a determination by the Court. Such determination of Allowed status may be made before or after the Plan is confirmed.

An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan. Pursuant to the provisions of section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan, if such vote is not cast in

7

good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a Distribution under the Plan.

Whether or not a Claimant votes on the Plan, such persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed-down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

## 2.      *Confirmation of the Plan*

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in section 1129(a) of the Bankruptcy Code are satisfied. These are complex statutory provisions, and the preceding paragraphs are not intended to be a complete summary of the law. If you do not understand any of these provisions, please consult with an attorney.

IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO RELY UPON THE "CRAM DOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Court may confirm the Plan, even if all impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, Tantum will seek confirmation of the Plan as to such non-accepting Classes pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision. The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of section 1129(b)(2)(A). The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class will receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims or Interests.

## 3.      *Confirmation Hearing and Objections to Confirmation*

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold the Confirmation Hearing with respect to the Plan.  At the Confirmation Hearing, the Bankruptcy Court will finally approve this Disclosure Statement and it will confirm the Plan, only if all of the applicable requirements of sections 1125 and 1129 of the Bankruptcy Code are met.  The Confirmation Hearing is scheduled before the Honorable Laura T. Beyer, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of North Carolina, at the United States Bankruptcy Court, Charles Jonas Federal Building, Courtroom 2A, 401 West Trade Street, Charlotte, North Carolina 28202, on **October 23, 2024 at 9:30 a.m**.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served upon the following on or before **5:00 p.m. (EST) on October 14, 2024**:

> Robert A. Cox, Jr.
> Hamilton Stephens Steele + Martin, PLLC
> 525 N. Tryon Street, Suite 1400
> Charlotte, NC  28202
> *Counsel for the Debtors*

-and-

> Bankruptcy Administrator
> Western District of North Carolina
> 401 West Trade Street, Suite #2400
> Charlotte, NC  28202

-and-

> Andy Houston
> Moon Wright & Houston, PLLC
> 212 N. McDowell Street
> Suite 200
> Charlotte, NC 28204
> *Counsel for the Official Committee of Unsecured Creditors*


## II.    INFORMATION REGARDING THE CHAPTER 11 CASES

### A.    Commencement of the Chapter 11 Cases

#### 1.    *Filing of the Petition*

The Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 26, 2023 (the "Petition Date").

#### 2.    *Unsecured Creditors Committee or Trustee*

The Court appointed an Official Committee of Unsecured Creditors for Tantum (the "Committee") on July 18, 2023.

#### 3.    *Continuation of Business after Filing*

The Debtors have continued to manage their business and affairs as Debtors in Possession, subject to the oversight of the Bankruptcy Administrator and the Bankruptcy Court. Certain actions of the Debtors during the Chapter 11 Case, including all transactions outside of the ordinary course of business, if any, were taken only after first requesting and receiving authorization from the Bankruptcy Court. Upon the filing of the chapter 11 petitions,

9

substantially all claims against the Debtors that existed prior to the Petition Dates became subject to the automatic stay provisions under section 362 of the Bankruptcy Code. These pre-petition claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

### B.      Assets of the Debtors

The Debtors' assets consist principally of (i) certain restaurant equipment and other personal property used in the operation of corporate run Back Yard Burger stores, (ii) certain Franchise Agreements and the royalties due on an on-going basis thereunder for 9 franchise locations, and (iii) certain intangible property associated with the Back Yard Burger brand.

The Debtors own no real property.

### C.      Significant Events During The Chapter 11 Case

#### 1.      *First Motion to Approve Debtor In Possession Loan and Use of Cash Collateral*

Shortly after the Petition Date, on June 27, 2023, the Debtors filed their *Motion Of The Debtors Seeking Interim Order (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing Debtors To Use Cash Collateral; (III) Scheduling A Final Hearing Under Bankruptcy Rule 4001(B); and (IV) Granting Related Relief* (the "Initial DIP Loan Motion"), whereby Tantum sought entry of an interim order authorizing and approving a postpetition debtor in possession loan from Guaranty Bank ("Guaranty Bank") and authorizing the Debtors to use Cash Collateral of Guaranty Bank, among other relief.

The Initial DIP Motion was approved on an interim basis pursuant to that *Interim Order (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing Debtors To Use Cash Collateral; (III) Scheduling A Final Hearing Under Bankruptcy Rule 4001(B); and (IV) Granting Related Relief* (the "Interim Order") entered on July 3, 2023.  After entry of the Interim Order, the Debtors borrowed funds under debtor in possession financing to fund post-petition obligations, with such borrowing being repaid to the extent that the operations of the Debtors allowed sufficient funds to repay such loans.

On or about September 7, 2023, Guaranty Bank notified Tantum that it was withdrawing its agreement to provide the debtor in possession loan under the Initial DIP Motion, and pursuant to that order entered on November 14, 2023, the loan was no longer available to fund any expenses under budgets after September 24, 2023.

However, with the consent of Guaranty Bank, the Debtors have been authorized to use cash collateral.

As of the date hereof, all amounts that the Debtors borrowed under the Initial DIP Loan have been repaid in full, and the only remaining amounts that may be due under the Initial DIP Loan are for certain fees and/or attorneys' fees associated with such loan.

2.      ***Second Motion to Approve Debtor in Possession Loan***

On November 3, 2023, the Debtors filed their *Motion Of The Debtors Seeking Interim Order (I) Authorizing The Debtors To Obtain New Postpetition Financing, (II) Scheduling A Final Hearing Under Bankruptcy Rule 4001(B), and (III) Granting Related Relief* (the "Second DIP Financing Motion"), whereby Tantum sought authorization and approval of a new debtor in possession loan from Axum Capital Partners Fund I, L.P or its affiliate ("Axum"), one of the indirect equity holders of the Debtors, in the total amount of $200,000.

The Second DIP Financing Motion was approved as modified by that *Order (I) Authorizing the Debtors to Obtain New Postpetition Capital and (III) Granting Related Relief* [Doc No. 201]. (the "New DIP Financing Order"), which authorized a capital contribution from the Axum Fund of up to $200,000 to Tantum, which the Debtors and the Axum Fund are entitled to treat as a paid new value contribution for purposes of the Chapter 11 plan. As of the date hereof, Axum has made contributions in the total amount of $200,000 to the Debtors as capital contributions under the New DIP Financing Order.

## III.    TANTUM'S PLAN OF REORGANIZATION

The following summary of the Plan is qualified by reference to the Plan and the exhibits to this Disclosure Statement and the Plan. It is the Plan and orders entered by the Bankruptcy Court and not this Disclosure Statement that govern the rights and obligations of the parties.

### A.      General Structure of the Plan

The Plan provides for payment in full of all Allowed Administrative Claims and the GFS PACA Claim on or shortly after the Effective Date of the Plan from funds generated by Tantum's operations and/or provided by Axum. The Plan proposes for payment of priority tax claims in full as outlined in the Plan. The Plan further provides for partial payments to secured creditors and unsecured creditors as outlined in the Plan.

Additionally, all equity in the Reorganized Debtors will vest in Axum or its designee in (i) full satisfaction of any prepetition claims of Axum and (ii) in exchange for the new value provided by the Axum Fund as post-petition capital contributions to Tantum, as well as any additional capital contributions made by the Axum Fund on or before the Effective Date.

### B.      Unclassified Claims

Consistent with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and the GFS PACA Claim are not included in any Classes of Claims or Equity Interests. As defined in the Plan, "Administrative Expense Claims" are any Claims for costs and expenses of administration of the Bankruptcy Cases allowed under sections 503, 507(a)(1), or 507(b) of the Bankruptcy Code, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

### C.    Classification and Treatment of Claims and Interests

Article III. of the Plan provides for the classification and treatment of seven (7) Classes of Claims and Interests.  A Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class.

A Claim is entitled to a distribution only to the extent that the Claim is "Allowed" and entitled to distributions under the Plan.  The term "Allowed Claim" is defined in section 1.4 of the Plan.  To the extent any claim is subject to objection at the time it would otherwise come due for payment under this Plan, the full amount will be escrowed pending resolution of that objection.

A number of Claimholders may file claims in excess of their scheduled amounts, and certain Claimholders that are not listed in the Schedules (including parties to contracts and leases that have been or will be rejected by the Debtors as provided for under the Bankruptcy Code) will file Claims against the Debtors.  The Debtors and/or the Liquidating Trustee will review these filed Claims, attempt to reconcile them with the Debtors' books and records, and file objections as necessary.

The following is a summary of the Classes of Claims and Equity Interests and the manner in which they are treated under the Plan.  Tantum believe that the treatment afforded all Classes of Claims and Equity Interests under the Plan fully comports with the requirements of the Bankruptcy Code and case law.

#### 1.    *Allowed Administrative Expense Claims*

Except to the extent the holder of an Allowed Administrative Claim against Tantum has been paid by the Tantum prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Claim against Tantum shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

#### 2.    *PACA Claim of Gordon Food Service, Inc.*

The PACA claim of Gordon Food Service, Inc. (the "GFS PACA Claim") was previously resolved by the *Consent Order resolving Debtors' Objection to Gordon Food Service, Inc.'s Motion for Order Requiring Immediate Payment or Adequate Protection of PACA Claim* [Doc. 239] (the "GFS Order").  Pursuant to the GFS Order, the Debtors have been making monthly payments towards the GFS PACA Claim that will continue until Plan confirmation.  The remaining balance of the GFS PACA Claim is to be paid in full at the same time that Allowed Administrative Claims are satisfied in accordance with the terms of this Plan.

3.      *Class 1 - Allowed Unsecured  Priority Tax Claims*

Except to the extent that a holder of an Allowed Unsecured Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Unsecured Priority Tax Claim shall be paid the Allowed amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in Cash payments commencing forty-five (45) days after the Effective Date, in equal quarterly installments within five (5) years from the Petition Date, and in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code.

Tantum estimates that the Allowed Unsecured Priority Tax Claims are in the aggregate approximate amount of $811,940.00 and that such allowed claims shall be paid in full in accordance with the Plan.[3]

4.      *Class 2 – The First DIP Lender*

Class 2 consists of the secured claim of Guaranty Bank for the remaining amounts owed under the Interim Order entered in association with the Initial DIP Loan Motion which are in the amount of $14,029.15.

This claim shall be paid in full upon the Effective Date of the Plan.

5.      *Class 3– Prepetition Secured Claim of Guaranty Bank*

Class 3 consists of the Secured Claim of Guaranty Bank as the Prepetition Lender to Tantum.

The Class 3 claim shall be paid in cash by Tantum in the amount of $500,000.00 on the Effective Date (the "Class 3 Payment") in full satisfaction of the Class 3 Claim; and Prepetition Secured Lender shall waive any unsecured deficiency claim against the Debtors, the bankruptcy estates and the Liquidating Trust.  Upon the Class 3 Payment, all liens securing the Prepetition Secured Lender's claim shall be deemed satisfied and released.

6.      *Class 4– Guaranty Bank's Equipment Loans*

Class 4 consists of all Allowed Claims of Guaranty Bank secured by purchase money liens in certain equipment and other personal property owned by Tantum, which shall be retained and used by the Reorganized Debtors.

---

[3] The Debtors reserve the right to object to, and or challenge, the allowance and/or amounts of the claims of any creditors in the Chapter 11 Cases.

Guaranty Claims Allowed Claims secured by the equipment will be bifurcated.  Guaranty Bank shall have an allowed secured claim as of the Effective Date in the total amount of $1,291,167.99 (the "Allowed Equipment Secured Claim"), which shall be paid from the Reorganized Debtors' operational cash flow as follows:

Interest Rate:  3.0% fixed

Payment Terms.  The Allowed Equipment Secured Claim will be paid as follows:

Year 1:  Monthly interest only payments.

Starting in year 2: A 10 year amortization schedule of principal and interest payments with a balloon payment of the balance of the allowed secured claim due upon the maturity date.

Maturity Date.  On the 4th anniversary of the Effective Date, provided that the Allowed Equipment Secured Claim may be repaid earlier than the Maturity Date without penalty.

Retention of Liens.  Guaranty Bank shall retain all existing liens, security interests, and encumbrances, the equipment under the Equipment Loans, and the Plan Debtor will stipulate that such liens, encumbrances, and security interests are properly perfected.

Deficiency Claim.  Guaranty Bank will have an allowed unsecured claim representing its deficiency claim in the amount of $554,089.16, to be treated as a general unsecured claim which shall be paid pursuant to the treatment of Class 5.

## 7.     *Class 5 – Allowed General Unsecured Claims*

Class 5 consists of the Allowed General Unsecured Claims against Tantum.

Holders of Allowed General Unsecured Claims in Class 5 shall receive a *pari passu* distribution of the Liquidating Trust Assets from the available cash on hand of the Liquidating Trust after the payment of the Liquidating Trustee's fees and expenses, the fees and expenses of any professionals retained by the Liquidating Trustee, and any other costs, expenses or obligations incurred by the Liquidating Trust. The Liquidating Trustee shall have the right to make one or more interim distributions to the holders of Allowed Class 5 Claims in his or her sole discretion.

## 8.     *Class 6 – Claims of Axum*

Class 6 consists of the Allowed Claims of Axum, including solely for the purpose of providing new value for purposes of confirmation, the post-petition capital contributions made by the Axum Fund to Tantum, as well as those funds provided by the Axum Fund to pay those amounts due at or around the Effective Date of the Plan, including the payment of the Class 3 claim of Prepetition Lender.

The Class 6 Claims of Axum will be satisfied by the issuance of 100% of the membership interests in the Reorganized Debtor to Axum, or its designee, and all obligations owed on the Class

14

6 Claims will be extinguished. For the avoidance of doubt, Axum shall not have any Allowed General Unsecured Claims in Class 5 of the Plan.

### 9.    *Class 7 – Equity Interest*

Class 7 consists of all pre-petition Equity Security Interests, defined as any ownership interest or share in the Debtors (including, without limitation, all options, warrants, or other rights to obtain such an interest or share in the Debtors) whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

The holder(s) of the Debtors' pre-petition Equity Interests will not receive or retain any property under the Plan on account of those pre-petition Equity Security Interests.

### D.    The Liquidating Trust

On the Plan's Effective Date, the Liquidating Trust will be formed as set forth below for the sole and exclusive benefit of the holders of Allowed General Unsecured Claims classified in Class 5 of the Plan. The Liquidating Trust will be governed by the terms of the Plan and the Liquidating Trust Agreement, a copy of which is attached to the Plan as Schedule 5.1.

### 1.    *The Liquidating Trust Assets.*

The term "Liquidating Trust Assets" shall mean and refer to the following assets:

(a) $24,008.01 currently held in trust by Moon Wright & Houston, PLLC related to a prior preference settlement payment;

(b) $250,000.00 shall be provided by the Axum Fund to be paid to the Liquidating Trust on the Effective Date;

(c) $850,000 shall be paid to the Liquidating Trust by the Reorganized Debtor monthly for 60 months, with payments commencing in the first full month after the Effective Date on the following terms:

> Year 1: $150,000.00 shall be paid in equal monthly installments of $12,500.00;
> Years 2-5: $175,000.00 per year shall be paid in monthly installments of $14,583.33 per month; and
> Each monthly payment shall be due on or before the fifth day of the month.

(d) All Chapter 5 Avoidance Actions; and

(e) All Causes of Action that accrue in the Liquidating Trust on or after the Effective Date.

**2.** *Creation of the Liquidating Trust.*

On the Effective Date: (i) the Liquidating Trust shall be created and established by the execution and delivery of the Liquidating Trust Agreement and any other necessary action, subject to the provisions of the Plan; (ii) all Liquidating Trust Assets shall be transferred to the Liquidating Trust free of all Claims, Liens, Encumbrances and Interests for the sole and exclusive benefit of Holders of Allowed General Unsecured Claims against Tantum classified in Class 5 of the Plan.  The Liquidating Trust shall reduce to Cash or otherwise liquidate the Liquidating Trust Assets and distribute such liquidated assets in accordance with and subject to the terms and provisions of the Plan and the Liquidating Trust Agreement.

As of the Effective Date, the Liquidating Trust shall be authorized to and responsible for (i) liquidating or otherwise reducing to Cash the Liquidating Trust Assets, (ii) filing, prosecuting and settling the Chapter 5 Avoidance Actions, (iii) filing, prosecuting and settling any Causes of Action, (iv) paying all expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, without further order of the Bankruptcy Court, (v) making distributions to Holders of Allowed General Unsecured Claims in Class 5 of the Plan, (vi) overseeing the continued liquidation to Cash of all other Liquidating Trust Assets, (vii) reviewing, settling, resolving and objecting to Claims that have not, as of the Effective Date, been resolved, (viii) enforcing the terms of the Plan and the Post-Confirmation Revolving Credit Loan, and (ix) taking any other action contemplated by or reasonably necessary to carry out the terms of the Plan or the Liquidating Trust Agreement.

All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust in accordance with the Liquidating Trust Agreement. The costs and expenses incurred by the Liquidating Trustee in administering, maintaining or liquidating the Liquidating Trust Assets, including the reasonable fees and expenses of the Liquidating Trustee, and any professionals, attorneys, accountants, consultants and agents retained by the Liquidating Trustee incurred in connection with the Liquidating Trust Assets, and taxes, levies and assessments related to the Liquidating Trust Assets, shall be paid from the Liquidating Trust Assets.

The Liquidating Trustee shall make distributions from the Liquidating Trust to the holders of Allowed General Unsecured Claims classified in Class 5 of the Plan.  Such distributions shall be made at such times and intervals as determined by the Liquidating Trustee in his or her sole discretion; provided however, that the Liquidating Trust is required to distribute to the holders of Allowed General Unsecured Claims in Class 5 on account of their interests in the Liquidating Trust the proceeds of any litigation and the proceeds of the sale of any Liquidating Trust Assets no later than the sixtieth (60th) day after the entry of the Final Decree.  Prior to such date, the Liquidating Trustee, in his or her business judgment when it is cost effective to do so, shall be authorized to make one or more interim distributions.

For federal income tax purposes, it is intended that the Liquidating Trust be classified as a grantor trust and a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if there was a deemed transfer of the Liquidating Trust Assets to the beneficiaries followed by the deemed transfer of such Liquidating Trust Assets by the beneficiaries to the Liquidating Trust.  Accordingly, the beneficiaries will be treated, for federal income tax

16

purposes, as grantors and owners of their respective share of the Liquidating Trust Assets. It is anticipated that the Liquidating Trust Assets will consist primarily of unasserted claims of unascertainable or zero value and thus the Liquidating Trustee anticipates ascribing zero value to such Liquidating Trust Assets as of the date of transfer. The valuation ascribed to the Liquidating Trust Assets shall be used consistently by the Liquidating Trust and the beneficiaries of the Liquidating Trust for all Federal income tax purposes. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose, and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term.

The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will send, to the extent required, to each beneficiary of the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

The beneficial interests of the Liquidating Trust shall be nontransferable and any such transfer shall be disregarded by the Liquidating Trustee except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

### 3.    *The Liquidating Trustee.*

The Committee shall have the exclusive and unilateral authority to select the Liquidating Trustee, subject only to approval by the Bankruptcy Court. On the Effective Date, Jason M. Torf, Esq. shall be appointed as the Liquidating Trustee. In these Chapter 11 Cases, Mr. Torf has represented Gordon Food Service, Inc. in relation to its Claim against the Debtors, including representing Gordon Food Service, Inc. as a member of the Committee. After the Effective Date, Mr. Torf, and his law firm, Tucker Ellis LLP, will no longer represent Gordon Food Service, Inc. in relation to the Chapter 11 Cases, the Committee, and/or any Claims against the Debtors and/or the Reorganized Debtor. However, Mr. Torf may continue to represent Gordon Food Service, Inc. in matters unrelated to the Chapter 11 Cases, the Debtors, and/or the Reorganized Debtor. The Liquidating Trustee shall be compensated on the following terms: (a) a monthly fee in the amount of (i) $7,500.00 per month for the first six months, and (ii) $5,000.00 per month for the remainder of the engagement, (b) a 5% contingency fee calculated solely on any gross litigation recoveries that are actually collected by the Liquidating Trustee (based on settlements or litigation), provided however, that the contingency fee shall not include or be based on the Plan payments to be made

17

by Axum or the Debtor, and (c) reimbursement of all reasonable out of pockets costs and expenses incurred by the Liquidating Trustee for serving in the capacity as Liquidating Trustee. This compensation structure may be re-evaluated by the Bankruptcy Court on a prospective basis only after the passage of twenty-four months from the Plan's Effective Date. The compensation structure may only be re-evaluated upon the filing of a motion by the Liquidating Trustee or a beneficiary of the Liquidating Trust. In the event a motion to re-evaluate the compensation structure is filed, the Bankruptcy Court will resolve the motion by applying the standards governing the reasonableness of compensation to be paid to officers set forth in section 330 of the Bankruptcy Code and the applicable case law interpreting the statute.

On the Effective Date, the Liquidating Trustee shall execute the Liquidating Trust Agreement and any other documents necessary to be appointed as the Liquidating Trustee. The Liquidating Trustee, once appointed, shall act as trustee on behalf of the Liquidating Trust to carry out its obligations and exercise its rights in accordance with, and subject to, this Plan, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Liquidating Trustee in his or her official capacity, with respect to his/her status, duties, powers, acts or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court. The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Liquidating Trust Agreement and the Plan. Subject to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to hire such professionals as he or she deems necessary to assist him/her in carrying out the Liquidating Trustee's duties.

Unless otherwise authorized by the Bankruptcy Court, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to investing in demand and time deposits.

The Liquidating Trustee shall be authorized and empowered and has standing as a representative of the Estate, to pursue and prosecute, to settle, or to decline to pursue, all Chapter 5 Avoidance Actions or Causes of Action, whether or not such claims have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by the Debtor or the Debtor's Estate, if applicable. The Liquidating Trustee may pursue or decline to pursue all Chapter 5 Avoidance Actions or Causes of Action, and may settle, release, sell, assign, otherwise transfer or compromise such claims or rights in the Liquidating Trustee's business judgment.

Upon the Effective Date, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Chapter 11 Case. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

4.      *Final Administration of Liquidating Trust.*

Upon full administration of the Liquidating Trust Assets, the Liquidating Trust shall be deemed terminated without further notice, and the Liquidating Trustee shall thereupon be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan, on the later of the following to occur: (i) the ninetieth (90th) day following entry of the Final Decree, (ii) the filing of the final tax return of the Liquidating Trust, and (iii) such date set by Order of the Bankruptcy Court. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

E.      **Means For Implementation And Execution Of The Plan**

1.      **Distributions of Available Funds.**

Tantum anticipates that all Allowed Administrative Claims and the GFS PACA Claim will be paid in full from funds generated from Tantum's post-petition operations, and to the extent necessary, additional post-petition capital from the Axum Fund or its affiliates. Tantum projects to be operationally solvent upon emerging from bankruptcy as the Reorganized Debtor.

2.      **Operation of the Business.**

The Reorganized Debtor plans to continue its operations following the confirmation of the Plan. Based on the projected financials of the Reorganized Debtor, the operations contemplated in this Section 4 will generate sufficient operating revenue to fund all payments required by the Reorganized Debtor under this Plan.

3.      **Identity of Insiders to be Employed.**

As of the Petition Date, Mark Cote was the Chief Executive Officer. Mr. Cote has continued to serve in such role during the course of the Chapter 11 Case and is proposed to continue in such role following the Effective Date as the Chief Executive Officer of the Reorganized Debtor. Mr. Cote has more than 45 years of combined experience in the Reorganized Debtor's industry. As such, Mr. Cote has a skill set and base of knowledge that is invaluable to the Plan Debtor's successful reorganization, consistent with the interest of creditors and equity security holders and with public policy. Mr. Cote will be compensated consistent with the compensation awarded during the course of the Chapter 11 Case, and commensurate with industry standards.

4.      **Authority to Act Following Confirmation Date and Effective Date.**

Upon confirmation of this Plan, the Reorganized Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or

19

contemplated by this Plan.

As of the Effective Date, the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

5. **The Axum Fund's Commitment to Fund Claim 3 Payment, Administrative Expense Claims, and Required Payments to Obtain Confirmation.**

To the extent that the Debtors are unable to fund the payment of the Claim 3 Payment, the cost of administration, and any other expenses required for the confirmation of the Plan, the Axum Fund will provide up to $930,000.00 of funding to the Debtors for purposes of paying such amounts.

6. **Post-Confirmation Revolving Loan.**

Axum shall arrange for, or the Axum Fund shall provide the Reorganized Debtor with, a revolving credit line in the maximum amount of $500,000.00 (the "Post-Confirmation Revolving Loan"). The Post-Confirmation Revolving Loan shall be available to the Reorganized Debtor, to the extent necessary, to fund expenses of the Reorganized Debtors incurred in the ordinary course of business and/or to fund any payments due under the Plan. Both the Reorganized Debtor and the Liquidating Trust/Trustee may enforce the obligation of Axum to fund a draw request by the Debtor on the Post-Confirmation Revolving Loan. The Post-Confirmation Revolving Loan can only be used to pay expenses incurred in the ordinary course of business of the Reorganized Debtor after the Effective Date of the Plan and any payments due to the Liquidating Trustee in accordance with the Plan, as needed and requested by the Reorganized Debtor. The Bankruptcy Court will maintain jurisdiction to enforce the Post-Confirmation Revolving Loan. The Reorganized Debtor may draw on the loan and repay borrowed sums subject to the conditions set forth in section 7.8 of the Plan. The Post-Confirmation Revolving Loan shall be memorialized by the Loan Agreement attached to the Plan as Schedule 7.6.

7. **BYB Leasing LLC.**

As of the Petition Date, BYB Leasing had no other assets other than certain leases of non-residential real property. After the Petition Date, BYB Leasing rejected all leases of non-residential real property with the exception of one lease identified on Schedule 6.1, Exhibit A. Under the Plan, BYB Leasing shall assume and assign such lease to the Reorganized Debtor on the Effective Date.

Any creditors of BYB Leasing shall receive no distribution under the Plan except for any distribution based upon allowed claims against the Plan Debtor and/or any payments in relation to an assumed and assigned lease to the Reorganized Debtor. The assets of BYB Leasing and Tantum are not being substantively consolidated for any purpose under the Plan.

Within ten business days from the Effective Date, BYB Leasing shall file a motion seeking

20

the dismissal of its bankruptcy case.

### F.   Other Provisions of the Plan

#### 1.   Administrative Claims and Related Bar Date

In accordance with section 2.1 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Effective Date, must be filed and served on the Reorganized Debtor and the Bankruptcy Administrator no later than <u>thirty (30) days</u> after the Effective Date.

Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

#### 2.   Executory Contracts

##### a.  *Generally*

In accordance with Article 6 of the Plan, as of the Effective Date, (i) the unexpired leases set forth in Schedule 6.1, Exhibit A to the Plan shall be assumed by BYB Leasing and assigned to the Reorganized Debtor; and (ii) the unexpired leases and executory contracts set forth in Schedule 6.1, Exhibit B, shall be assumed by the Reorganized Debtor as of the Effective Date.  Any Cure Payments for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtors or otherwise addressed elsewhere in this Plan, shall be made by the Reorganized Debtor upon the Effective Date.

All executory contracts and/or unexpired leases of the Debtors, to the extent not assumed in these bankruptcy cases, shall be deemed rejected as of the Effective Date.

##### b.  *Claims Bar Date Relating to Executory Contracts and Unexpired Leases*

There is a separate deadline for filing claims arising from the rejection of an executory contract or unexpired lease after Confirmation.  That deadline is the later of 30 days after Confirmation or 30 days after the rejection.  Greater detail on this deadline is found in section 6.4 of the Plan.  Please note that section 6.4 of the Plan does not act to extend any deadline or bar date that was previously set by the Bankruptcy Court to file a Claim for rejection damages, or to extend any other bar date or deadline to file Claims.

### 3.   Causes of Action

Except as otherwise specifically provided in the Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as the Reorganized Debtor deems appropriate, any and all claims and causes of action (although specifically excluding the Chapter 5 Avoidance Actions that are being assigned to the Liquidating Trust), whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan or any Plan exhibit, and the Reorganized Debtor shall not be required to seek further approval of the Bankruptcy Court for such actions.

### 4.   Objections to Claims

Prior to the Effective Date, the Debtor shall have the exclusive right to object to the allowance, amount or classification of Claims and interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor, or compromised and settled in accordance with the business judgment of the Debtor, subject to further order of the Bankruptcy Court.  After the Effective Date, the Reorganized Debtor shall have the exclusive right to object to any Claim other than General Unsecured Claims, and such objections may be litigated to Final Order by the Reorganized Debtor, or compromised and settled in accordance with the business judgment of the Reorganized Debtor, subject to further order of the Bankruptcy Court.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtor to Claims, other than General Unsecured Claims, shall be filed no later than ninety (90) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor, without notice, upon ex *parte*  motion.

After the Effective Date, the Liquidating Trustee shall have the exclusive right to object to the allowance, amount or classification of General Unsecured Claims in the Chapter 11 Cases, and such objections may be litigated to Final Order by the Liquidating Trustee, as applicable, or compromised and settled in accordance with the business judgment of the Liquidating Trustee, subject to further order of the Bankruptcy Court.

### 5.   Miscellaneous

The Plan also contains certain miscellaneous provisions including the retention of jurisdiction over the Plan by the Bankruptcy Court even after confirmation; a discharge and termination of all liabilities of and all Claims against the Estate and Debtor, except as otherwise specifically provided in the Plan; a discharge injunction; and a preservation of claims owned by the Debtor through Article 9 of the Plan.  Interest holders are directed there to understand such terms with greater specificity.

Further there are General Provisions set forth in Article 11 of the Plan that incorporate typical contract terms such as rules of construction, the place for notices and choice of law. That Article also incorporates substantive elements of bankruptcy law which are unlikely to impact creditors such as rights to amend the Plan if such amendments do not adversely affect creditors or

22

exemption from certain tax liability.  Again, all creditors are encouraged to review and consider the Plan in its entirety.

### 6.      Conditions Precedent to Confirmation

There are certain conditions precedent which may delay or derail the Plan taking effect, even after entry of a Confirmation Order.  Those conditions and potential termination of the Plan are set forth in Article 10 of the Plan.

## IV.      CONFIRMATION OF THE PLAN

### A.      Feasibility

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of Tantum. In connection therewith, Tantum is confident that there will be sufficient funds on hand to satisfy the minimum distributions required under section 1129(a)(9) of the Bankruptcy Code.

### B.      Acceptance

As a condition to confirmation, section 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan. In general, a class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that class are modified. The Bankruptcy Code defines acceptance of a plan (a) by a class of creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests.  Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan.

Under section 1126(f) of the Bankruptcy Code, classes of Allowed Claims that are not "impaired" are conclusively deemed to have accepted the Plan. Under § 1126(g) of the Bankruptcy Code, classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired pursuant to the Plan.

### C.      Non-Acceptance and Cram Down

If any Class of impaired Claims fails to accept the Plan, Tantum will seek a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under section 1129(b) of the Bankruptcy Code. Tantum also reserves the right to amend the Plan and request confirmation of the Plan as further amended. If an amendment to the Plan is material, Tantum may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan. The Plan's treatment of Classes is consistent with the foregoing. Consequently, Tantum believes that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to section 1129(b) of the Bankruptcy Code, Tantum will seek Confirmation of the Plan notwithstanding the possible rejection of the Plan by holders of Claims in any Class.

### D.   Best Interests Test (Liquidation Analysis)

Exhibit B, entitled "*Liquidation Analysis*," represents the proceeds that would be generated in the event Tantum is liquidated under chapter 7 of the Bankruptcy Code. As such, the Liquidation Analysis reflects the amount that would be available to pay general unsecured claims if all of Tantum's assets were liquidated and the proceeds paid in accordance with the priorities of the Bankruptcy Code. To demonstrate compliance with the "best interests of creditors" test set forth in § 1129(a)(7) of the Bankruptcy Code, the Plan Debtor estimates and projects that the total value of its assets generated from a hypothetical liquidation of the Plan Debtor under chapter 7 of the Bankruptcy Code would be in the total approximate amount of $434,631. The Liquidation Analysis was prepared by the Plan Debtor, with assistance from its financial and legal advisors, and represents their estimate and projection of the value of Plan Debtor's assets and property if liquidated in accordance with chapter 7 of the Bankruptcy Code. All, or substantially all, of the Plan Debtor's assets are encumbered by liens in favor of various secured creditors, such that no proceeds would be available to unsecured creditors in a chapter 7 liquidation.

**Disclaimer. The Liquidation Analysis is premised upon a number of estimates and assumptions that, although developed and considered reasonable by Tantum is inherently subject to significant business, economic and competitive uncertainties beyond its control and, as discussed below, may be subject to change. Thus, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if Tantum was, in fact, to undergo any such liquidation. In addition, any liquidation ultimately undertaken would take place under future circumstances that cannot be predicted with certainty. Accordingly, although the Liquidation Analysis that follows is necessarily presented with numerical specificity, if the underlying Bankruptcy Estate was, in fact, liquidated as described herein, the actual proceeds from such liquidation could vary significantly from the amounts set forth in the Liquidation Analysis. The actual liquidation proceeds could be materially higher or lower than the amounts set forth in the Liquidation Analysis, and no representation or warranty can be or is being made with respect to the actual proceeds that would be generated from the liquidation of the Tantum's assets and property under chapter 7 of the Bankruptcy Code. The Liquidation Analysis has been prepared solely for the purposes of estimating the proceeds that would be available if Tantum liquidated under chapter 7 of the Bankruptcy Code for purposes of the "best interests" test and does not represent values that may be appropriate for any other purpose, including the values applicable in the context of the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED AS OR CONSTITUTES A CONCESSION OR ADMISSION FOR ANY PURPOSE OTHER THAN THE PRESENTATION OF A HYPOTHETICAL LIQUIDATION ANALYSIS, AS REQUIRED BY THE "BEST INERESTS" TEST.**

## V.   POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The following discussion summarizes some of the more significant United States federal income tax consequences of the Plan. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "IRC" or "Tax Code"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") as in effect on the date hereof.

Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could significantly affect the federal income tax consequences discussed below. This summary does not address foreign, state, or local income tax, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker/dealers, and tax-exempt organizations). Accordingly, it should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or Interest.

Due to the complexity of certain aspects of the Plan, some of which are discussed below, the lack of applicable legal precedent and the possibility of changes in the law, the differences in the nature of various Allowed Claims, the differences in the methods of accounting of holders of Allowed Claims or Interests, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties.

The tax consequences to holders of allowed claims or interests may vary based upon the individual circumstances of each holder.  Moreover, the tax consequences of certain aspects of the plan are uncertain due to the lack of applicable legal precedent and the possibility of changes in the law. No ruling has been or will be applied for or obtained from the internal revenue service with respect to any of the tax aspects of the plan and no opinion of counsel has been or will be requested or obtained by the plan proponent with respect thereto. This discussion does not constitute tax advice or a tax opinion concerning the matters described. There can be no assurance that the internal revenue service will not challenge any or all of the tax consequences described herein, or that such a challenge, if asserted, would not be upheld. Accordingly, each holder of an allowed claim or interest is strongly urged to consult with its own tax advisor regarding the federal, state, local, foreign, or other tax consequences of the plan.

### Federal Income Tax Consequences to the Holders of Interests

Under the Plan, the holders of Interests in Tantum will have the Interests cancelled and will not receive any payment with respect to such cancellation. Holders of Interests in Tantum generally may recognize loss in the amount of the holder's adjusted tax basis in its Interest.  The character of any recognized loss will depend upon several factors including, but not limited to, the status of the holder, the nature of the Interest in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period, and the extent to which the holder had previously claimed a deduction for the worthlessness of all or a portion of the Interest. A loss generally is treated as

25

sustained in the taxable year for which there has been a closed and completed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered.

**HOLDERS OF INTERESTS IN TANTUM SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF LOSS FOR FEDERAL INCOME TAX PURPOSES.**

Holders of Interests may be allocated income, gain, loss, and deductions recognized by Tantum as a result of the implementation of the Plan. The tax consequences to a holder of an Interest from such allocation will vary from holder to holder based on the individual circumstances of that holder. Accordingly, this summary does not further address the U.S. federal income tax consequences applicable to a holder of an Interest who is allocated income, gain, loss, or deductions by Tantum.

**EACH HOLDER OF AN INTEREST IN TANTUM SHOULD CONSULT ITS OWN TAX ADVISOR WITH RESPECT TO THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO IT OF THE IMPLEMENTATION OF THE PLAN.**

### Federal Income Tax Consequences to Holders of Allowed Claims

The federal income tax consequences of the Plan to a holder of an Allowed Claim will depend upon several factors, including but not limited to: (i) whether the holder's Allowed Claim (or a portion thereof) constitutes a payment for principal or interest, (ii) the origin of the holder's Allowed Claim, (iii) the type of consideration given by the holder in exchange for the Allowed Claim, (iv) whether the holder is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above), (v) whether the holder reports income on the accrual or cash basis method, (vi) whether the holder has taken a bad debt deduction or worthless security deduction with respect to the Allowed Claim, and (vii) whether the holder receives Distributions under the Plan in more than one taxable year.

**HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF DISTRIBUTIONS ON ACCOUNT OF THEIR PARTICULAR ALLOWED CLAIMS**.

Generally, a holder of an Allowed Claim will recognize gain or loss equal to the difference between the "amount realized" by such holder and such holder's adjusted tax basis in the Allowed Claim. The character of any recognized gain or loss (e.g., ordinary income or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Allowed Claim in its hands, the purpose and circumstances of its acquisition, the holder's holding period of the Allowed Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim.

**HOLDERS OF ALLOWED CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

**Transfer Tax**

Pursuant to Section 1146 of the Bankruptcy Code, the transfers or conveyances under the Plan may not be taxed under any law imposing a stamp tax or similar tax, including without limitation, the documentary stamp tax under North Carolina law because such transfers and conveyances are made under and in connection with a chapter 11 plan which has been confirmed under Bankruptcy Code Section 1129.

**VI.    CONCLUSION AND RECOMMENDATION**

For the reasons set forth herein, Tantum believes that confirmation and implementation of the Plan is preferable because it will provide the greatest recoveries to holders of Claims.

**THE PLAN PROPONENT THEREFORE URGES HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO ACCEPT THE PLAN.**

Dated: September 17, 2024                    Respectfully submitted,

**TANTUM COMPANIES, LLC**

By: */s/ Mark Cote*_____
        Mark Cote
        Chief Executive Officer

**HAMILTON STEPHENS
STEELE + MARTIN, PLLC**

*/s/ Robert A. Cox, Jr.*_____
Robert A. Cox, Jr. (NC State Bar No. 21998)
Matthew A. Winer (NC State Bar No. 56222)
Hamilton Stephens Steele & Martin, PLLC
525 N. Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone:  (704) 344-1117
Facsimile: (704) 344-1483
*rcox@lawhssm.com*
*mwiner@lawhssm.com*
*Counsel for Debtors and Debtors-in-Possession*

27

# ARTICLE 5.1

## Exhibit

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

In re:

**Tantum Companies, LLC, et al.,**[1]

               Debtors.

Case No. 23-30407

Chapter 11

**LIQUIDATING TRUST AGREEMENT**

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of September___, 2024 (the "Effective Date"), by and among Tantum Companies, LLC (the "Debtor") and _____, as Liquidating Trustee, provides for the establishment of a liquidating trust evidenced hereby (the "Liquidating Trust") to resolve, liquidate and realize upon the Liquidating Trust Assets pursuant to the *Amended Plan of Reorganization of Tantum Companies, LLC* dated and filed in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") on _____, 2024, as the same may be further amended and/or modified (the "Plan").

A.     The Liquidating Trust is created pursuant to, and to effectuate, the Plan, which was confirmed by order of the Bankruptcy Court entered on _____, 2024 (the "Confirmation Order"). [Doc. _____].

B.     Except with respect to the terms defined in this Trust Agreement, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan.

C.     The Liquidating Trust is created on behalf of, and for the sole and exclusive benefit of, the holders of Allowed General Unsecured Claims classified in Class 5 of the Plan (the "Beneficiaries," which are also referred to herein as the "Holders of Liquidating Trust Interests") (whether or not such Claims are Allowed as of the Plan's Effective Date).

D.     The Liquidating Trust is established for the sole purpose of liquidating the Liquidating Trust Assets, resolving Disputed Claims and making distributions to the Beneficiaries in accordance with the Plan, the Confirmation Order, this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective to continue or engage in the conduct of a trade or business.

E.     The Liquidating Trust is intended to qualify as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations.

---

[1] The Debtors in this jointly administered case are (the last four digits of their respective taxpayer identification numbers follow in parentheses): Tantum Companies, LLC (8256) and BYB Leasing, LLC (2164).

F.      All of the Liquidating Trust's income is to be treated as subject to tax on a current basis to the Beneficiaries who will be responsible for the payment of any tax due.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the above-noted parties agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1     ***Transfer of Property to Liquidating Trust; Assignment and Assumption of Claims***.  Pursuant to the terms of the Plan, title to the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, Claims, Encumbrances and Interests for the sole and exclusive benefit of Holders of Allowed General Unsecured Claims against Tantum classified in Class 5 of the Plan. The Liquidating Trustee hereby agrees to accept and hold the Liquidating Trust Assets in trust for the Beneficiaries, subject to the terms of this Trust Agreement, the Plan and the Confirmation Order.  Upon the transfer of the Liquidating Trust Assets, the Liquidating Trustee shall succeed to all of the Debtor's right, title and interest in the Liquidating Trust Assets, if applicable, and the Debtor will have no further interest in the Liquidating Trust Assets or this Liquidating Trust.   Nothing contained herein should be interpreted to extinguish the Debtor's, the Reorganized Debtor's, or Axum's obligations to the Liquidating Trust under the Plan.

1.2     ***Treatment of Transfer of Liquidating Trust Assets***.   For federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the Liquidating Trustee, and the Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as: (i) a transfer of the Liquidating Trust Assets directly to the Beneficiaries immediately followed by (ii) the transfer of the Liquidating Trust Assets to the Liquidating Trust by the Beneficiaries. Accordingly, the Beneficiaries shall be treated as the grantors and owners of their allocable portion of the Liquidating Trust for federal income tax purposes.

1.3     ***Valuation of Liquidating Trust Assets***.   As soon as practicable after the Effective Date, the Liquidating Trustee shall make a good faith determination of the fair market value of the Liquidating Trust Assets as of the Effective Date.

1.4     ***Appointment of the Liquidating Trustee***.   The original Liquidating Trustee shall be Jason M. Torf, Esq..

## ARTICLE II
## LIQUIDATING TRUST INTERESTS

2.1     ***Identification of Beneficiaries***.   The Beneficiaries shall be identified and set forth in a register maintained by the Liquidating Trustee expressly for such purpose. All references in this Trust Agreement to the Beneficiaries shall be read to mean the holders of Allowed General Unsecured Claims of record in Class 5 of the Plan as set forth in the official register maintained

by the Liquidating Trustee and shall not mean any beneficial owner not recorded on such official registry.

2.2     **_Transferability of Liquidating Trust Interests_**.  The Liquidating Trust Interests of the Beneficiaries shall not be transferable; provided, however, that the Liquidating Trust Interests shall be assignable or transferable by will, intestate succession, operation of law, or as otherwise set forth in this Trust Agreement.

2.3     **_Holders of Liquidating Trust Interests Have Limited Rights in Connection with Administration of the Liquidating Trust_**.  This Trust Agreement grants exclusive authority over administration of the Liquidating Trust to the Liquidating Trustee, except as otherwise expressly provided in this Trust Agreement or the Plan.

2.4     **_Intent_**.  The parties hereto intend that the rights of the holders of the beneficial interests arising under this Liquidating Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

## ARTICLE III
## THE LIQUIDATING TRUSTEE

3.1     **_Generally_**.  The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust and the Plan and not otherwise.

3.2     **_Authority and Responsibilities of Liquidating Trustee_**.

(a)     In connection with the administration of the Liquidating Trust, except as set forth in this Trust Agreement, the Liquidating Trustee is authorized and directed to perform any and all acts reasonably necessary or desirable to accomplish the purposes of the Plan, even to the extent such Plan provisions are not expressly included in this Trust Agreement.

(b)     The Trustee shall be vested with all rights, powers, benefits and standing to liquidate the Liquidating Trust Assets, and to carry out the terms and intent of the Plan and the Liquidating Trust Agreement.

(c)     The Liquidating Trustee shall liquidate and convert to cash the Liquidating Trust Assets, resolve Disputed Claims, make timely distributions to Beneficiaries consistent with the provisions of the Plan, and not unduly prolong the duration of the Liquidating Trust. In so doing, the Liquidating Trustee will exercise reasonable business judgment in liquidating the Liquidating Trust Assets.

(d)     The Liquidating Trustee is authorized to perform all reasonable and appropriate acts to effectuate the terms and purposes of the Plan, including but not limited to: (1) liquidating or otherwise reducing to Cash the Liquidating Trust Assets, (2) filing, prosecuting and settling the Chapter 5 Avoidance Actions, (3) filing, prosecuting and settling any Causes of Action that accrue in the Liquidating Trust on or after the Effective Date, (4) paying all expenses of the Liquidating Trust without further order of the Bankruptcy Court, (5) establishing reserves for the costs and expenses of the Liquidating Trust, (6) making interim and final distributions to Beneficiaries at such times as the Liquidating Trustee determines in his reasonable business judgment, (7) investigating, reviewing, settling, resolving and objecting to Claims, (8) establishing reserves for Disputed Claims, (9) enforcing the terms of the Plan and the Post-Confirmation Revolving Credit Loan, (10) employing and retaining professionals on reasonable terms to assist in the liquidation of Liquidating Trust Assets and administration of the Liquidating Trust, (11) filing appropriate tax returns on behalf of the Liquidating Trust, and (12) taking any other action the Liquidating Trustee deems reasonable and proper to carry out the terms of the Plan or the Liquidating Trust Agreement.

3.3     *Limitation of Liquidating Trustee's Authority*.

(a)     Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to and shall not engage in any trade or business with respect to the Liquidating Trust Assets. Except as otherwise allowed by this Trust Agreement, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations or inconsistent with Section 345 of the Bankruptcy Code.

(b)     The Liquidating Trustee shall not commingle any of the Liquidating Trust Assets with his or her own property or the property of any other person.

(c)     The Liquidating Trustee shall not grant any liens on the Liquidating Trust Assets.

(d)     The Liquidating Trustee shall not cause the Liquidating Trust to guaranty any debt.

(e)     The Liquidating Trustee shall not loan Liquidating Trust Assets to the Liquidating Trustee.

3.4     *Books and Records*.   The Liquidating Trustee shall maintain books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust and the payment of expenses of, and liabilities or claims against, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.   A Beneficiary may request information relating to the management of the Liquidating Trust Assets as long as access is reasonably exercised during normal business hours and is not

detrimental to the Liquidating Trust. Nothing in this Trust Agreement provides any Beneficiary with a right to review, inspect, seek discovery of or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

      3.5    ***Distributions; Withholding***. The Liquidating Trustee shall make distributions pursuant to the terms of the Plan, in accordance with Beneficiaries' relative beneficial interests in the Liquidating Trust, of all net proceeds from the liquidation of Liquidating Trust Assets; provided, however, that any such distribution shall only be made if: (i) the claims reserve account is fully funded, and (ii) the Liquidating Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Liquidating Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with the Plan or this Trust Agreement.

      3.6    ***Compliance with Laws***.  Any and all distributions of the Liquidating Trust Assets shall be in compliance with applicable laws and the Plan.

      3.7    ***Reliance by Liquidating Trustee***.  Except as otherwise provided in this Trust Agreement, the Liquidating Trustee may rely, and shall be fully protected in acting, or refraining from acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document (each a "Document") that the Liquidating Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles or emails, to have been sent by the proper party or parties, and the Liquidating Trustee may rely as to the truth of the statements and correctness of the opinions expressed in any Document. The Liquidating Trustee may consult with counsel and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken by the Liquidating Trustee in accordance therewith.

      3.8    ***Investment and Safekeeping of Trust Assets***.  The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations and to the investment guidelines of Bankruptcy Code Section 345.

      3.9    ***Expense Reimbursement and Compensation***.

            (a)    The Liquidating Trust Assets shall be subject to the payment of the Liquidating Trustee's fees and the fees and expenses of the Liquidating Trustee's retained professionals, and the Liquidating Trustee shall be entitled to reimburse itself out of any available cash in the Liquidating Trust, for its actual reasonable out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Liquidating Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Liquidating Trustee under this Trust Agreement.

(b)     As compensation for the performance of its duties hereunder, the Liquidating Trustee shall be compensated on the following terms: (a) a monthly fee in the amount of (i) $7,500.00 per month for the first six months, and (ii) $5,000.00 per month for the remainder of the engagement, (b) a 5% contingency fee calculated solely on any gross litigation recoveries that are actually collected by the Liquidating Trustee (based on settlements or litigation), provided however, that the contingency fee shall not include or be based on the Plan payments to be made by Axum or the Debtor, and (c) reimbursement of all reasonable out of pockets costs and expenses incurred by the Liquidating Trustee for serving in the capacity as Liquidating Trustee. This compensation structure may be re-evaluated by the Bankruptcy Court on a prospective basis only after the passage of twenty-four months from the Plan's Effective Date. The compensation structure may only be re-evaluated upon the filing of a motion by the Liquidating Trustee or a beneficiary of the Liquidating Trust. In the event a motion to re-evaluate the compensation structure is filed, the Bankruptcy Court will resolve the motion by applying the standards governing the reasonableness of compensation to be paid to officers set forth in section 330 of the Bankruptcy Code and the applicable case law interpreting the statute.

(c)     If the cash in the Liquidating Trust shall be insufficient to compensate and reimburse the Liquidating Trustee, including reasonable fees and expenses of any professionals retained by the Liquidating Trustee, then the Liquidating Trustee may reduce to cash that portion of the Liquidating Trust Assets necessary so as to effect such compensation and reimbursement.

3.10    **Insurance; Bond**.  The Liquidating Trustee may obtain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee under this Trust Agreement (in the form of an errors and omissions policy or otherwise). If necessary, the Liquidating Trustee may serve with a bond, the cost and expense of which shall be paid by the Liquidating Trust.

3.11    **Confidentiality**.  The Liquidating Trustee shall hold, and shall cause his agents and representatives to hold, during the period that he serves as the Liquidating Trustee under this Trust Agreement, strictly confidential (except as required by law or order of a court) and not use for personal gain any material, non-public information of or pertaining to any entity or matter to which any of the Liquidating Trust Assets relates or of which he has become aware in his capacity as Liquidating Trustee.

## ARTICLE IV
## SUCCESSOR LIQUIDATING TRUSTEE

4.1     ***Removal***.   The Liquidating Trustee may only be removed by the Bankruptcy Court upon application for good cause shown, which application may only be brought by a Beneficiary of the Liquidating Trust.

4.2     ***Resignation***.   The Liquidating Trustee may resign by giving not less than thirty (30) days prior written notice thereof to all parties in interest.

4.3     ***Appointment of Successor***.   In the event of the Liquidating Trustee's removal, resignation, death or in the event the Liquidating Trustee otherwise becomes incapable of serving as Liquidating Trustee (including incompetency in the case of a Liquidating Trustee that is a natural person, dissolution, in the case of a Liquidating Trustee that is a corporation or other entity, or bankruptcy or insolvency), then any Beneficiary may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

4.4     ***Acceptance of Appointment by Successor Liquidating Trustee***.   Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall file such acceptance with the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all the properties, rights, powers, trusts and duties of its predecessor in the Liquidating Trust with like effect as if originally named herein.

4.5     ***Continuance of the Liquidating Trust***.   The death, incapacity, resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or revoke any existing agency (other than the agency of the former Liquidating Trustee as Liquidating Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, the Liquidating Trustee shall promptly (i) execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the resigning or removed Liquidating Trustee's capacity under this Trust Agreement; (ii) deliver to the successor Liquidating Trustee all documents, instruments, records, and other writings relating to the Liquidating Trust as may be in the possession or under the control of the resigning or removed Liquidating Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Liquidating Trustee's obligations and functions by the successor Liquidating Trustee. The resigning or removed Liquidating Trustee hereby irrevocably appoints the successor Liquidating Trustee as his or her attorney-in-fact and agent with full power of substitution for and in his or her name, place and stead to do any and all such acts that such resigning or removed Liquidating Trustee is obligated to perform. Such appointment shall not be affected by the subsequent disability or incompetence of the Liquidating Trustee making such appointment.

## ARTICLE V
## REPORTS TO HOLDERS OF LIQUIDATING TRUST INTERESTS

5.1 ***Reports to Holders of Liquidating Trust Interests***.

(a)      ***Reports to Beneficiaries***.  In his or her sole discretion, the Liquidating Trustee may provide periodic status reports to the Beneficiaries of the Liquidating Trust.

(b)      ***Federal Income Tax***.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

(c)      ***Other Reporting***.  The Liquidating Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental authority.

(d)      ***Tax Reporting***.  Promptly following the end of each calendar year, the Liquidating Trustee shall submit to the Beneficiaries a separate statement setting forth such Beneficiary's share of items of income, gain, loss, deduction or credit in accordance with applicable tax rules and regulations.

(e)      ***Additional Reports***.  The Liquidating Trustee shall prepare, file and/or distribute any additional reports reasonably requested by a Beneficiary or otherwise required under this Trust Agreement.

## ARTICLE VI
## TERMINATION OF LIQUIDATING TRUST

6.1      ***Termination of Liquidating Trust***.  The Liquidating Trust will terminate on the earlier of: (a) the liquidation, administration and distribution of the Liquidating Trust Assets in accordance with the terms of this Trust Agreement and the Plan, and the Liquidating Trustee's full performance of all other duties and functions set forth herein or in the Plan; and (b) the fifth (5th) anniversary of the Effective Date, unless such term is extended pursuant to section 6.2 of this Trust Agreement and section 7.1.1 (e) of the Plan.

6.2      ***Extension of Term of Liquidating Trust***.  Any extension of the term of the Liquidating Trust set forth in section 6.1 hereof must be (i) for a finite period of time, (ii) if necessary, preceded by the Liquidating Trustee's receipt of a favorable ruling from the IRS that the Liquidating Trust's continued existence beyond such period would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for U.S. federal income tax purposes, and (iii) approved by the Bankruptcy Court prior to the beginning of the extended term.

## ARTICLE VII
## AMENDMENT AND WAIVER

7.1      ***Amendment and Waiver***.  Any substantive provision of this Trust Agreement may be amended or waived by the Liquidating Trustee in writing, provided such amendment or

waiver does not substantially impair the substantive rights or interests of the Beneficiaries. Technical amendments to this Trust Agreement may be made by the Liquidating Trustee, as necessary, to clarify this Trust Agreement or enable the Liquidating Trustee to effectuate the terms of this Trust Agreement or the Plan. Any amendments to this Trust Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust or the Plan.

### ARTICLE VIII
### MISCELLANEOUS PROVISIONS

8.1     *Preservation of Privilege and Defenses*.  In connection with the rights, claims, and litigation that constitute the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trustee and its representatives, and the Liquidating Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

8.2     *Liability of Liquidating Trustee; Indemnification*.  The Liquidating Trustee, its members, shareholders, designees or professionals, or any duly designated agent or representative of the Liquidating Trustee, its employees, shall not be liable for the act or omission of any other member, designee, agent or representative of such Liquidating Trustee, nor shall such Liquidating Trustee be liable for any act or omission taken or omitted to be taken in its capacity as Liquidating Trustee other than for specific acts or omissions resulting from the Liquidating Trustee's or such person's willful misconduct, gross negligence or fraud. The Liquidating Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Liquidating Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or its members, shareholders and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, and its members, shareholders, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud. Persons dealing with the Liquidating Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trustee to

such person in carrying out the terms of this Trust Agreement, and the Liquidating Trustee shall have no any personal obligation to satisfy any such liability.

8.3 ***Cooperation and Further Assurances of the Debtor***. The Debtor or Reorganized Debtor, as applicable, shall, upon reasonable request of the Liquidating Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Liquidating Trustee any portion of the Liquidating Trust Assets intended to be conveyed in the form and manner provided for in the Plan and to vest in the Liquidating Trustee the powers, instructions, or funds in trust hereunder. The Debtor shall also, upon reasonable request of the Liquidating Trustee, provide additional documentation or information necessary to investigate and resolve Claims and investigate, resolve and prosecute the Chapter 5 Avoidance Actions. The Debtor and Reorganized Debtor, for itself and any predecessor or successor entity, hereby disclaims and waives any and all rights to any reversionary interests in any of the Liquidating Trust Assets. The Debtor shall provide the Liquidating Trustee with copies of such of its books and records as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder and as set forth in the Plan.

8.4 ***Laws as to Construction***. This Trust Agreement shall be governed and construed in accordance with the laws of the State of North Carolina, without giving effect to rules governing the conflict of law.

8.5 ***Severability***. If any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined finally by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

8.6 ***Notices***. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

(a) **If to the Liquidating Trustee**: [insert notice information for Trustee].

(b) **If to a Beneficiary**: Any notice to a Beneficiary required to be provided hereunder shall be deemed sufficient if deposited, postage prepaid, in a post office or letter box and sent to the address listed in the Debtor's Schedules or a proof of claim filed by a Beneficiary. If a Beneficiary desires a new address for receiving notices and/or distributions, then that Beneficiary must file a notice with the Bankruptcy Court identifying such alternative address and serving same on the Liquidating Trustee by first class mail. Absent such notice, the Liquidating Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon actual receipt by the Liquidating Trustee.

8.7     **Headings**.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

8.8     **Relationship to the Plan**.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.  In the event that any provision of the Plan is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

8.9     **Exclusive Jurisdiction and Standing**.    The Bankruptcy Court shall have exclusive jurisdiction over all controversies, suits and disputes that may arise under this Trust Agreement. The Liquidating Trustee shall have standing in any such proceeding to enforce the rights of the Liquidating Trust or of the Beneficiaries arising under this Trust Agreement or the Plan. Any and all claims and disputes, if any, asserted against the Liquidating Trustee are subject to the exclusive jurisdiction of the Bankruptcy Court.

IN WITNESS WHEREOF, the Debtor and the Liquidating Trustee have either executed or acknowledged this Trust Agreement, or caused it to be executed or acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Tantum Companies, LLC

By: _____
Name: Mark Cote
Title: Chief Executive Officer

Liquidating Trustee

By: _____
Name: Jason M. Torf, Esq.
Title: Liquidating Trustee

## AMENDED ARTICLE 6.1

## EXHIBIT A

| Landlord | Description of Lease | Cure Amount[1] |
|---|---|---|
| Primax Properties, LLC<br>1100 East Morehead Street<br>Charlotte, NC 28204-2812 | Lease for Batesville, Mississippi Location (185 House Carlson Dr, Batesville, MS 38606) | $11,680.44 |
| J.C. Michael Trust<br>12400 Fox Lair Dr.<br>Collierville, TN 38017 | Lease for Park Ave Location in Memphis, TN<br>(5091 Park Ave, Memphis, TN 38117) | $18,337.50 |

---

[1] Portions of the amounts set forth in Amended Article 6.1 Exhibit A may include certain taxes which may be subject to change depending on the timing of the Effective Date of Tantum's Plan. Additionally, the cure amounts set forth on Amended Article 6.1 Exhibit A do not include those post-petition amounts due under the Leases which the Debtors have been paying, and intend to continue to pay, in the ordinary course of business. Accordingly, the amounts set forth in Amended Article 6.1 Exhibit A may be subject to change depending on the timing of the Effective Date of Tantum's Plan and/or by further agreement between the Debtors and the Landlords identified herein.

## AMENDED ARTICLE 6.1

## EXHIBIT B

| Landlord | Description of Lease | Cure Amount[1] |
|---|---|---|
| Lester's Back Yard Burgers JV III 215 Lynwood Terrace Nashville, TN 37205 | Lease for Hwy 64 Location in Arlington, TN (9000 Us Highway 64, Arlington, TN 38002) | $130,109.88 |
| Realty Income Corporation 600 La Terraza Boulevard Escondido, CA 92025 | Lease for Location in Southaven, MS (165 Goodman Rd, Southaven, MS 38671) | $16,804.12 |
| Axum Capital Partners, LLC/SouthPark Towers 6100 Fairview Road, Suite 1156 Charlotte, NC 28210 | Sublease for Corporate Office in Charlotte, NC (6100 Fairview Road, Suite 1156, Charlotte, NC 28210) | $40,000.00 |

---

[1] Portions of the amounts set forth in Amended Article 6.1 Exhibit B may include certain taxes which may be subject to change depending on the timing of the Effective Date of Tantum's Plan. Additionally, the cure amounts set forth on Amended Article 6.1 Exhibit B do not include those post-petition amounts due under the Leases which the Debtors have been paying, and intend to continue to pay, in the ordinary course of business. Accordingly, the amounts set forth in Amended Article 6.1 Exhibit B may be subject to change depending on the timing of the Effective Date of Tantum's Plan and/or by further agreement between the Debtors and the Landlords identified herein.

**EXHIBIT B**

## Tantum Companies, LLC

**Estimated Liquidation Value**

| ($) | Est. FMV |
|---|---|
| **Current Assets** | |
| Cash | $66,817 |
| Accounts Receivable | 28,437 |
| Inventory | 22,647 |
| **Total Current Assets** | **$117,901** |
| **LT Assets** | |
| PP&E, Net | $150,000 |
| Intangible Assets, Net | 134,000 |
| Other Assets | 32,730 |
| **Total LT Assets** | **$316,730** |
| **Estimated FMV of Assets** | **$434,631** |